**Bobbie PINKETT**

v.

**CREDITHRIFT OF AMERICA, INC., # 2.**

**Civ. A. No. C76–664A.**

United States District Court, N. D. Georgia, Atlanta Division.

March 30, 1977.

David W. Hibbert, Atlanta, Ga., for plaintiff.

Kirby G. Bailey, Decatur, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Under Local Rule 250, this action brought pursuant to the Consumer Credit Protection Act, 15 U.S.C. §§ 1601, *et seq.* (Truth in Lending Act), was referenced to a special master to determine the issues and to make a written report of findings of fact and conclusions of law with a recommendation to this court for final action.

■ The action arises out of a reaffirmation agreement entered into in December 1975 after the plaintiff had been adjudicated bankrupt. The underlying obligation reaffirmed was a $3,000 loan agreement executed in June 1975. The plaintiff's complaint raises several alleged violations of the Act and Regulation Z promulgated thereto, but the special master recommended judgment in favor of the plaintiff for the minimum recovery of $100.00 plus attorney's fees on the ground that the loan was void under the Georgia Industrial Loan Act, Ga.Code Ann. §§ 25–301, *et seq.*, § 25–9903, and that the defendant failed to disclose this fact to the plaintiff. In particular, the special master found that one clause in the original note[1] provided that the defendant, under certain conditions could accelerate payment of the entire unpaid balance of the loan (including unearned interest) in violation of Ga.Code Ann. § 25–315(a), *see Hodges v. Community Loan & Inv. Corp.*, 234 Ga. 427, 216 S.E.2d 274 (1975); *Lawrimore v. Sun Finance Co.*, 131 Ga.App. 96, 205 S.E.2d 110 (1974) (en banc), *aff'd* 232 Ga. 637, 208 S.E.2d 454 (1974).

---

1. The clause reads as follows: "If this conveyance includes a motor vehicle, the Grantors covenant that they will not remove it from the State of Grantor's residence and, if other property is included, it will not be moved from the address listed above, without the written consent of the Grantee. A breach of this provision shall at the option of the Grantee render the entire amount unpaid, due and payable at once."

Although it is not clear whether the reaffirmance also allowed the defendant to accelerate unearned interest, or just principal, the special master correctly concluded that the reaffirmance of an obligation void under the Industrial Loan Act is also void, *Douglas v. Dixie Finance Corp.*, 139 Ga. App. 251, 228 S.E.2d 144 (1976).

I. Before the court addresses the heart of this claim, it must first dispose of the assertion, made by the defendant in *James v. American Finance System of East Point, Inc.*, No. C75–1220A, a case raising identical issues, that a loan transaction which is void under state law cannot provide a basis for *any* truth-in-lending violations. This theory rests upon the notion that since the loan is void *ab initio*, there can be no consumer credit transaction within the meaning of 15 U.S.C. § 1639(a), and no credit extended within the meaning of § 1631(a). The defendant is correct in concluding that Georgia law renders a transaction such as the one at issue void, not merely voidable, and that the creditor has no legally enforceable right to recover either principal or interest, *Hodges v. Community Loan & Inv. Corp., supra*, 234 Ga. at 430–31, 216 S.E.2d 274. But that conclusion does little to convince this court that an implicit exception should be written into the Act where an explicit one does not now exist. The Act is to be construed liberally to effect its remedial purposes, *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740, 748 (5th Cir. 1973), and it simply makes no sense to exempt a creditor from liability for defects in his disclosure statement merely because the loan agreement is later found to have been in violation of state law, *see Barrett v. Vernie Jones Ford, Inc.*, 395 F.Supp. 904, 908 (N.D.Ga.), *rev'd on other grounds*, 543 F.2d 568 (5th Cir. 1976), *see also Kuykendall v. Malernee*, 516 P.2d 558 (Okl.Ct.App.1973), and *Roberts v. Allied Finance Co.*, 129 Ga.App. 10, 198 S.E.2d 416 (1973). While it may be adding insult to injury, the imposition of a penalty[2] still serves the dual purpose of (1) recompensing the consumer for injury caused by the misleading disclosure, and (2) deterring the creditor from future violations. This is especially true where the truth-in-lending violation is separate and distinct from the violation of state law. This court therefore concludes that the Truth in Lending Act applies to this transaction.

II. The special master, relying on his recommendations in *James v. American Finance System of East Point, Inc., supra* (November 17, 1976 and December 29, 1976), and *Jerkins v. Public Finance Corp.*, No. C76–401A (November 23, 1976), which was approved by Judge O'Kelley in his order of January 12, 1977, concluded that a loan held void by the Industrial Loan Act should be held to be a violation of the Truth in Lending Act "when it masquerades as a loan contract," *James, supra*, Recommendation of December 29, 1976, at p. 11. He reached this conclusion because "[t]here can be no question that the most important truth about an illegal bargain is that because of the illegality plaintiff has the privilege not to perform his promise of payment." *Id.* Although he failed to cite any specific provision of the Act or Regulation Z, the special master presumably found that the defendant violated all of the provisions of 15 U.S.C. § 1639 in that it listed a finance charge, the dates when payment is due, other charges, etc., when in fact there were no charges or payments due under the agreement.

The defendant attempts to illustrate what he considers the absurdity of this decision by recommending certain disclosure

**2.** After finding that the defendant here violated the Truth in Lending Act, the special master recommended that only the minimum fine of $100.00 and attorney's fees be imposed because (1) there can be no finance charge to double pursuant to 15 U.S.C. § 1640(a) when the loan is void, and (2) a greater award would create *too* great an accumulation of penalties for the plaintiff, who is freed from making *any* payments for principal and interest under state law. Because of the result reached in Part II of this order, this court need not adopt or reject this recommendation at this time. However, the court notes that such reasoning is of questionable validity when the truth-in-lending violations contained in the note are distinct from the state law violations which render the note void.

statements which might have complied with the Act. For example:

Notice. The lender has inadvertently made an error in the. loan it is about to make to you. Such error is a violation of GILA and renders this intended loan uncollectible. You do not have to pay this loan back.

or

Notice. The lender herewith discloses that it is going to violate GILA when it makes borrower this loan. Said violation, although inadvertent, will give borrower the privilege of never having to pay back the intended loan.

Obviously, argues the defendant, it would not have entered into the loan if it knew that it was void, and it seems a bit unfair to penalize the defendant for failing to disclose something it did not know at the time. The special master, however, views the situation from the perspective of the consumer, who is dunned to make payments for a loan which is unenforceable. As must certainly be the case here in Georgia, many creditors, after learning that their form loan agreements were void under the law, continued to demand payment for the loans made under the faulty agreements. Should not the consumer at least be awarded a penalty and attorney's fees under the Act for being so misled by his creditor?

Unfortunately, an examination of the current case law does not provide a simple answer, since neither this court nor the Fifth Circuit Court of Appeals has addressed the relationship between the Truth in Lending Act and state law with particular consistency. In fact, there are two conflicting principles in this area which have each won acceptance in both courts. The first finds its expression in *Barrett v. Vernie Jones Ford, supra,* where this court held that if the creditor asserts a right in the note to accelerate all payments, including unearned interest, he must disclose that right pursuant to 12 C.F.R. § 226.8(b)(4). That holding was reversed by the Fifth Circuit, but the portion of the *Barrett* decision which is important here, and which was unaffected by the Fifth Circuit's decision, is

this court's conclusion that the creditor should be required to disclose all relevant rights he asserts in his note, *even though* he could not enforce those rights under state law:

The purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. It appears evident to the court that effectuation of this congressional purpose requires disclosure of all charges which the lender asserts a right to collect at the time credit is extended whether or not it is finally determined that he can utilize the enforcement mechanisms of the state court to collect the charge.

395 F.Supp. at 908. In order to further emphasize its point that state law did not affect the creditor's disclosure requirements the court gave the following example:

Thus if the defendants had entered into a credit transaction for which they charged interest at the rate of 50% per annum, their note would undoubtedly be voided as violative of state usury laws. It would not, however, contain a Truth in Lending violation if the actual interest rate charged was clearly disclosed as required by the Act.

395 F.Supp. at 912.

This principle won acceptance in the Court of Appeals' decision in *Pennino v. Morris Kirschman & Co.,* 526 F.2d 367 (5th Cir. 1976), where the plaintiff sought recovery based upon the creditor's failure to wait thirty days before imposing a finance charge as required by state law. Because the disclosure statement did not contain this thirty-day limitation, and because it accurately reflected the creditor's intention to impose an immediate charge, the plaintiff argued that the statement violated the Act. The Court of Appeals rejected the claim:

The district court held that the Act does not require a creditor to narrate the law of the forum state, but requires simply a meaningful disclosure of the credit

terms he intends to charge. We agree with the district court on this point and find no violation of the Truth in Lending Act or Regulation Z. The role of the Federal courts under the Act does not include enforcement of state laws of the type asserted.

526 F.2d at 371.

The "opposing" principle finds its best expression in *Pollock v. General Finance Corp.*, 535 F.2d 295, 299 (5th Cir. 1976), where the Court of Appeals affirmed Judge Moye's finding that the lender had violated the Act by failing to disclose that his security interest in consumer goods could not attach to goods acquired ten days after the "secured party gives value;" Ga.Code Ann. § 109–A–9–204(4)(b). Thus, the lender was not allowed to get by merely with a declaration of the rights he claimed in his note; he had to state the rights he claimed, as modified by state law. Ironically, the lender in *Pollock* tried to do both; his note stated that a security interest "would be retained" in all after-acquired household goods, but his disclosure statement merely asserted that the security agreement "may cover" such goods. If the *Pollock* court simply held that these two statements were inconsistent, it could find a violation consistent with *Barrett* and *Pennino*. Instead, the court went on to hold that the Act

> requires a lender to explain the 10 day limitation of UCC 9–204(4)(b) so that the borrower is informed that any consumer goods that he may acquire within 10 days of the loan transaction are subject to the security interest and that any consumer goods acquired after that date are not.

This position, which was adhered to uniformly in this district even prior to the Court of Appeals decision, *see Willis v. Town Finance Corp.*, 416 F.Supp. 10 (N.D. Ga.1976), and cases cited therein, is supported by the holdings of several other courts, *see, e. g., Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976); *Woods v. Beneficial Finance Co.*, 395 F.Supp. 9, 14 (D.Or.1975); *Kenney v. Landis Financial Group, Inc.*, 349 F.Supp. 939 (N.D.Iowa 1972).

This court originally attempted to reconcile *Pennino* with the *Pollock* doctrine in *Edna R. Hutchinson v. Public Finance Corp.*, No. C75–623A (February 6, 1976) (Edenfield, J.), by concluding that, in *Pennino*, it was the creditor's acts, and not his disclosure statement, which contravened state law, while in the *Pollock*-type case, it is the disclosure statement itself which contravenes that law. In retrospect, this court finds such reconciliation unconvincing; *Pennino* and *Pollock* stand on opposing principles. *Pennino* only requires the creditor to disclose the rights he claims in his note, while *Pollock* requires him to disclose only those rights he can assert consistent with state law. The special master urges this court to follow *Pollock*, the more recent pronouncement, but the court believes that *Pennino* sets the better course, and that *Pollock* should be strictly limited to its facts.

■ The declared purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit," 15 U.S.C. § 1601. Put simply, the consumer is entitled to know the terms on which a lender will extend him credit. The Act does not give the consumer the right to know all the creditor's rights and duties under state law. If the terms of the credit agreement violate that law, the consumer is free to resort to remedies provided by the state. It seems obvious to this court that if the Congress wanted it any other way, it would have explicitly said so. But if this court were to follow *Pollock* to its logical conclusion, the result would be the opposite: all notes which violated state law in the various areas pertinent to the Act would automatically give rise to a violation of the Act if the disclosure statements were consistent with the note.

■ Enforcement of this laudable Act has become confusing enough, without engrafting onto it the laws of the fifty states. Georgia, like many other states, provides severe penalties for violation of its lending

laws, and adding a penalty under the Truth in Lending Act solely for violation of the state's law would serve little purpose. It is true that in the *Pollock*-type situation the consumer is misled into thinking that the creditor has a greater security interest than he legally can enforce, and that state law would only intervene at the point where the creditor actually seeks to enforce that interest. But this case graphically demonstrates how a faithful adherence to *Pollock* can rapidly lead the courts astray. In most cases, a creditor will not knowingly prepare a note which is in violation of state law, so that acceptance of the special master's recommendation would have little deterrent effect. However, application of *Pennino* and *Barrett* would at least insure that the consumer was aware of the rights the creditor intended to assert somewhere down the line, and to the thousands of consumers who never seek legal advice as to their state and federal rights, this is the most effective remedy the court can provide. This court therefore feels that the best solution is to allow the states to devise their own remedies for violations of their statutes and to confine the present Truth in Lending Act to its limited goal of giving consumers an opportunity to intelligently review the terms on which the lender intends to extend credit. This is of no small benefit to the consumer, since it not only allows him to compare the credit terms proposed by various lenders, but also gives him an opportunity to discover possible state law violations which would otherwise be hidden in the note.

This court must therefore REJECT the special master's recommendation that plaintiff be granted summary judgment on his truth-in-lending claim; his recommendation concerning defendant's counterclaim on the note is ADOPTED, and plaintiff is hereby GRANTED summary judgment on that counterclaim, Rule 56(c), Fed.R.Civ.P. This case is REMANDED to the special master for consideration of other disclosure violations alleged by the plaintiff.

SO ORDERED.