**Faustin and Georgia MONTOYA,**
**Plaintiffs-Appellees,**

v.

**POSTAL CREDIT UNION,**
**Defendant-Appellant.**

No. 79–1198.

United States Court of Appeals,
Tenth Circuit.

Argued May 6, 1980.

Decided Aug. 18, 1980.

Rehearing Denied Oct. 17, 1980.

Herbert A. Delap of Shafroth & Toll, P.C., Denver, Colo., for defendant-appellant.

Peter H. Klages of Legal Aid Soc. of Albuquerque, Inc., Albuquerque, N.M. (Elena Spielman and Armando Torres, Albuquerque, N.M., with him on the brief), for plaintiffs-appellees.

Before SETH, Chief Judge, BREITENSTEIN and DOYLE, Circuit Judges.

SETH, Chief Judge.

The plaintiffs who are husband and wife brought this suit under the Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq.*, against the Postal Credit Union. The complaint alleges that certain required disclosures were not made as to New Mexico law relating to security on after-acquired property.

The record shows that the plaintiffs had secured a loan from the Postal Credit Union some five or six years before this suit. The loan was secured by a deed of trust on plaintiffs' house. This loan was changed several times, but by reason of nonpayment the defendant brought suit against plaintiffs in a state magistrate court in Albuquerque, New Mexico to obtain possession. The Montoyas were represented by the lawyer who represents them in this action. The case was set for trial. The magistrate suggested that the matter be settled and the parties agreed on a last-minute settlement. Thus the Credit Union agreed to dismiss the suit, and the Montoyas agreed to drop their counterclaim. It was agreed that the loan would again be rewritten to include with the then principal amount the expense the Credit Union had incurred in the magistrate suit. The loan was then in default. The security was the house and some personal property.

The stipulation for dismissal and the loan papers were prepared by the Credit Union for signature on January 19th, but they were not signed by the Montoyas until January 27th. The stipulation of dismissal was filed with the magistrate on February 8th and the case was dismissed. On March 30th this suit was filed.

The asserted failure to disclose in the loan papers signed pursuant to the settlement of the magistrate court suit was of a provision in New Mexico law, derived from the Uniform Commercial Code, relating to after-acquired property. This law provides in substance that a security interest including after-acquired property covers only such property acquired by the borrower within ten days after the lender "gives value." (N.M.S.A. § 55–9–204(4)(b)).

Thus the failure to disclose asserted by the plaintiffs in this action was of this ten-day statutory limitation. The fact was disclosed that the security interest covered after-acquired property, but the state law ten-day limitation was not. The basic issue presented is whether this element of state law should have been disclosed. It is apparent that after the ten-day period the after-acquired clause is ineffective to cover newly acquired property. The disclosure statement here concerned stated, "The Security Agreement secures future advances and covers after acquired property." As to the after-acquired property clause under New Mexico law, there are other provisions than the ten-day limitation which are significant. There are also provisions in the law directed to different types of property under the clause, and some case law.

## I.

It is clear that under 15 U.S.C. § 1639(a)(8) and Regulation Z (12 C.F.R. § 226.8(b)(5)) the lender must disclose the fact that the security interest covers after-acquired property. Regulation Z in part states that "[i]f after-acquired property will be subject to the security interest . . . this fact shall be clearly set forth." (12 C.F.R. § 226.8(b)(5)). The question is whether this is the extent of the obligation or whether state law variations as to the limits and effect of after-acquired property provisions under local law need also be described.

In Federal Reserve Board Letter 1053 the statement is made:

"As our previous letter indicates, a simple disclosure of the fact that after-acquired property may be subject to the security interest would be sufficient to comply

with the clear language of § 226.8(b)(5), without an explanation of the various conditions and limitations on such interests which may be imposed by the applicable State law. However, the fact that the creditor need not disclose such limitations and conditions does not mean that the creditor may affirmatively misstate the scope of the security interest, in disregard of those limitations. If, in fact, the creditor discloses an interest in '*all* after-acquired property,' when the interest would actually attach only to property acquired by the borrower within a certain period of time, such a disclosure would be inaccurate and misleading in violation of Regulation Z." (Emphasis supplied.)

Also in Federal Reserve Board Letter 983 the position is stated in part that:

"Staff's response indicated that the description of the security interest must accurately reflect the type of security interest that may be validly acquired under State law, in order to comply with § 226.8(b)(5). Letter 829 has been interpreted to require that the 10-day limitation on after-acquired property be included in the security interest disclosure under that section.

"Upon further consideration of that letter, staff believes that, to the extent that it would require a creditor to disclose limitations on after-acquired property, Letter 829 should be modified. In staff's opinion, it would be sufficient, in disclosing an after-acquired property clause under § 226.8(b)(5), to state simply that the security interest covered such property, without further describing the manner and conditions under which the interest attaches. We believe that this would comply with the relevant provisions in that section, which requires the creditor to clearly set forth the *fact* that after-acquired property will be subject to the security interest." (Emphasis supplied.)

Several cases including *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3d Cir.), discuss the weight to be given staff letters and memos which interpret the statutes or regulations of the Board. The matter would seem to be put at rest by the Court in *Ford Motor Credit Co. v.Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22. The Court there said: "Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive for several reasons." The Court then describes the several reasons why agency interpretation should be followed and in a footnote at 100 S.Ct. 797 states:

"To be sure, the administrative interpretations proffered in this case were issued by the Federal Reserve staff rather than the Board. But to the extent that deference to administrative views is bottomed on respect for agency expertise, it is unrealistic to draw a radical distinction between opinions issued under the imprimatur of the Board and those submitted as official staff memoranda. See Public Information Letter No. 444 [1969–1974 Trans. Bind.] (CCH) Cons.Cred.Guide ¶ 30,640 (1971). At any rate, it is unnecessary to explore the Board/staff difference at length, because Congress has conferred special status upon official staff interpretations. . . . "

Generally on the Board's rule-making power, *see Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318. *See* the "new Act," Pub.L. 96–221.

It is apparent that state law controls the consequences of the after-acquired property provision as it does most, if not all, other aspects of a transaction such as this. It is not a matter of state law *definition*, but instead a segment of the body of state statutes and court opinions which relate to and govern credit transactions. Once a requirement is made that state law consequences of a described security interest must be included in the disclosures, it is difficult to see how much should be so included. It would appear that a fairly complete summary should be given, if any at all is required, in order that an understandable description for a lay person may be provided.

748

Again, we are concerned with the *description* of the security interest. This is what the Act and the regulation focus upon. The security interest was here described as including an interest in after-acquired property and this was the *fact* to be disclosed. The state law limitations on that security interest, and the legal consequences under different circumstances, are quite a different matter. There are many statutory provisions and case law relating to real property mortgages, deeds of trust, and second deeds of trust. The enforcement remedies and creditors' rights under these statutes and under the case law present a comparable problem. There is just as much reason to include these elements of New Mexico law as to include the ten-day limit on after-acquired property.

█ State laws are part of the contract whether or not they are referred to in the agreement. *Farmers Bank v. Fed. Reserve Bank*, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157; *Von Hoffman v. City of Quincy*, 71 (4 Wall.) U.S. 535, 18 L.Ed. 403. Those for the borrowers' protection are thus included. "The law" is not thereby "disclosed," but it cannot be there described in any reasonable way. In *Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367, 371 (5th Cir.), the Fifth Circuit stated:

> "The district court held that the Act does not require a creditor to narrate the law of the forum state, but requires simply a meaningful disclosure of the credit terms he intends to charge. We agree with the district court on this point and find no violation of the Truth in Lending Act or Regulation Z."

The Court in *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22, considered the problem the creditor faces with too much disclosure, and said of this in part: "*Meaningful* disclosure does not mean *more* disclosure." (Emphasis supplied.) The Court also indicated that the balancing between "informational overload" and complete disclosure is a function of the Board and staff. Also, that the agency treatment of the acceleration clause disclosure, the issue there concerned, was the exercise of such a function.

█ The balancing was done by the Act, the Board, and staff. When the line is crossed, and we venture into the state law consequences of the after-acquired property clause, it would seem that if an adequate job is to be done it would necessarily create an "informational overload." *See* our recent cases *Yazzie v. Reynolds*, 623 F.2d 638 (10th Cir.), and *James v. Ford Motor Credit Co.* (10th Cir. No. 78–1806), concerning insurance. The Act requires the disclosure first of the dollars, the terms, the charges, and come of the arithmetic. As the Court said in *Milhollin*, "the Federal Reserve has adopted what may be termed a 'bottom-line' approach: that the most important information in a credit purchase is that which explains differing net charges and rates." Other important information, of course, includes a factual and accurate description of the security. The legal variations and permutations relating to the security need not be included. The disclosure here that the security included after-acquired property was accurate and adequate under the Act.

## II.

As a separate matter it is difficult to see how there is a case or controversy in those circumstances where the issue and the facts create nothing more than a difference of opinion on a theoretical matter. It has become something of a contest between the creditors and the attorneys for the purchasers-debtors as to these abstract questions. Questions which present no practical consequences as to the particular transaction and no issue as to them have arisen and in many instances cannot arise. The litigation over such questions is extensive and expensive and settles no practical differences but, again, only theoretical questions. This obviously is *not* a point relating to damages as we have held that actual damages need not be incurred, but instead is an indication of an absence of a justiciable controversy. No one will argue against the enforcement of the disclosure of the elements the Court mentioned in *Milhollin*, a fact description of

the security, and also such other elements under the Act which become a matter of real dispute between the parties and put the risk on the seller-lender. The matter of comparison shopping is obviously an important factor, but realistically it is difficult to see how the presence or absence of the ten-day limitation here concerned can be of any consequence in that context.

██ The reference to the "bottom-line" by the Supreme Court in *Milhollin* becomes very significant. The courts are not prepared to give advisory opinions even though there may be a prize awarded one of the litigants.

The case is REVERSED and REMANDED.

DOYLE, Circuit Judge, concurring.

I concur generally in part I of the opinion. I am persuaded by the Federal Reserve Board letters which are cited in Part I of the opinion and the court authorities which are cited, particularly the decision of the Supreme Court in *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

As I view part II of the opinion, it is unnecessary to a decision in the case. That part of the opinion criticizes the filing of litigation challenging the suit on the basis that it is not a case or controversy. It says that the point raised is not a point relating to damages. The opinion acknowledges that actual damages need not be incurred. We have recognized this in an earlier opinion, *Little Redhouse and Brady Tah., etc. v. Quality Ford Sales, Inc., etc. and Thomas E. Redd*, 523 F.2d 1 (10th Cir. 1975).

The Congress has, in effect, authorized a lawsuit by a person who has not suffered actual damages, but this does not mean that the present plaintiff has no stake in the outcome of the case, and in the present case it is my opinion that the plaintiff does have requisite interest.