**Peggy VENEY, Plaintiff,**

v.

**FIRST VIRGINIA BANK–COLONIAL and John Talley Motors, Inc., Defendants.**

**Civ. A. No. 81–0897–R.**

United States District Court, E. D. Virginia, Richmond Division.

March 23, 1982.

Henry W. McLaughlin, III, Neighborhood Legal Aid Society, Inc., Richmond, Va., for plaintiff.

Michael E. Ornoff, G. Thomas Taylor, Taylor, Hazen, Kauffman, Lipscomb & Smith, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff brings this action for monetary damages, attorneys' fees and costs under the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, for the alleged violation by the defendants of the statute and Federal Reserve Regulation Z, 12 C.F.R. § 226. The matter is before the Court on defendants' motions to dismiss for failure to state a claim. The Court's jurisdiction over this action is predicated on 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.

Plaintiff purchased an automobile in a credit transaction with defendant John Talley Motors, Inc. ("John Talley") on October 10, 1980. This sale was evidenced by an Installment Sale Agreement ("Agreement"), which was then assigned to defendant First Virginia Bank-Colonial ("First Virginia"). The Agreement called for 30 monthly installments of $92.92 each, the first due on November 20, 1980. Plaintiff contends in the instant action that the terms of the Agreement's acceleration clause were misleading and confusing.

The Agreement provided that defendant John Talley, as seller, or defendant First Virginia, as assignee of the seller, could without notice declare all unpaid installments to be due upon default by the plaintiff on any one installment:

Upon any default by purchaser in making payment of any of such installments, or in performing any of the conditions, provisions or covenants of this agreement, seller, or seller's successors or assigns at its option and without notice, may declare all unpaid installments to be due and payable forthwith.

This clause was disclosed on the face of the Agreement.

Virginia law, however, gives a debtor a ten-day grace period in which to make late payment of a missed installment and thereby avoid acceleration of the entire amount outstanding:

When acceleration of payment or repossession of consumer goods not allowed.— Notwithstanding any provisions in a contract, other evidence of indebtedness or security agreement arising from a sale or financing of consumer goods as defined in § 8.9–109 of this Code, no acceleration of payment or repossession on account of late payment or nonpayment of an installment shall be permitted if payment, together with any late payment penalty permitted under § 6.1–2.2, is made within ten days of the date on which the installment was due.

Va.Code § 11–4.3.

Plaintiff contends that the use in the Agreement of an acceleration clause allowing acceleration with no grace period ran afoul of Regulation Z, which in relevant part provides:

(c) Additional information. At the creditor's ... option, additional information or explanations may be supplied with any disclosure required by this Part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer ... or contradict, obscure, or detract attention from the information required by this Part to be disclosed.

26 C.F.R. § 226.6(c). Basically, plaintiff claims that the acceleration clause constituted disclosure not mandated by Regulation Z, but was "stated and/or utilized" so as to mislead or confuse the customer.

Defendants argue that plaintiff's complaint fails to state a claim because:

(1) § 226.6(c) of Regulation Z does not require a creditor to track the language of state law on creditors' remedies;

(2) even if Regulation Z does require disclosure of state law limiting rights claimed by the creditor, Virginia law places no such limit on a creditor's right

to accelerate and thus the right disclosed by defendants conforms with state law, making further disclosure unnecessary.

For the reasons which follow, the Court concludes that the defendants' motions to dismiss should be denied.

## I. *The Virginia Law Argument*

Because resolution of this argument in the defendants' favor would obviate the necessity of addressing the TILA question, the Court will consider it first.

Defendants contend that Virginia law permits the use of an acceleration clause such as the one involved in the instant case. Since the right disclosed is consistent with Virginia law, they contend, inclusion of the term in their agreement with the plaintiff was not misleading or confusing. Defendants rely on Va.Code § 6.1–330.35, which provides:

> Acceleration clause in note evidencing installment loan; effect of acceleration.— Any note evidencing an installment loan at an add-on rate may provide that the entire unpaid balance thereof, at the option of the holder, shall become due and payable under default in payment of any installment without impairing the negotiability of the note, if otherwise negotiable. Upon such acceleration, the lender shall not be entitled to judgment for unearned interest, but the balance owing shall be computed as if the borrower had made a voluntary prepayment and obtained an interest credit as of the date of acceleration based upon the Rule of 78 as defined in § 6.1–330.32. Such acceleration balance shall bear interest at the rate shown (or which should have been shown if a consumer transaction were involved) as the annual percentage rate under a truth-in-lending disclosure pursuant to federal law.

Defendants contend that Va.Code § 11–4.3, which allows the borrower the ten-day grace period in which to cure a default, is not a limitation on a creditor's right to accelerate, but only upon his remedy, as a "limiting condition subsequent."

This argument deserves little weight. Apparently, Va.Code § 6.1–330.35 is designed to allow the use of acceleration clauses without affecting the negotiability of the note and to prescribe the method of computing the balance due upon acceleration. This does not alter the fact that Va.Code § 11–4.3 limits this right to accelerate, at least in agreements involving consumer goods, by prohibiting acceleration if payment is made within ten days of default. No fine distinction between rights and remedies will resolve the primary issue in this action of whether disclosure of an absolute right of acceleration without noting the debtor's grace period is potentially confusing or misleading under 12 C.F.R. § 226.-6(c).

## II. *Section 226.6(c) of Regulation Z*

The specific question involved herein is whether a clause in a credit agreement by which the creditor asserts a right broader than that actually provided it under state law constitutes additional information "stated, utilized or placed so as to mislead or confuse the customer . . . ." The instant defendants claimed an absolute acceleration clause while state law limits the enforceability of such a right by providing the debtor a ten-day grace period to remedy the default. Plaintiff's claim is that a credit term is confusing and violative of § 226.6(c) whenever it asserts a right on behalf of the creditor broader than that actually available under state law, and thus fails to track the state law on the issue.

The TILA has the broad purpose of promoting "the informed use of credit" by assuring "meaningful disclosure of credit terms . . ." to consumers. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980) (TILA does not require that the existence of an acceleration clause always be disclosed on the face of a credit agreement). Congress felt that economic stabilization would be enhanced and the competition among institutions or firms which extend credit would be strengthened by the informed use of credit, which it saw to be the

result of all consumers' awareness of the cost of credit. The TILA is thus designed to assure meaningful disclosure of credit terms so that the consumer will be able to shop around and compare the various credit terms available to him or her and be able to "avoid the uninformed use of credit...." 15 U.S.C. § 1601(a).

The United States Court of Appeals for the Fifth Circuit has on several occasions addressed the question of the relationship between the TILA and credit agreement terms by which the creditor asserts rights broader than or different from those actually available under applicable state law. In *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367 (5th Cir. 1976), the creditor's disclosure statement contained a clause obligating the debtor to pay a finance charge if the full cash price of the merchandise involved in the sale had not been paid within 30 days after the date of sale. This term violated Georgia law, which prohibited such a charge until 30 days after the date on which the initial bill is mailed, which, under the facts of the case, would have been 54 days after the purchase. The debtor argued that the inclusion of this term in the disclosure statement contravened § 226.-6(c). Rejecting this argument, the court held that the TILA "does not require a creditor to narrate the law of the forum state, but requires simply a meaningful disclosure of credit terms he intends to charge." 526 F.2d at 371.

A different result was obtained in *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977), where another section of Regulation Z was involved. There, the creditor's disclosure statement recited that the security agreement "may cover after-acquired property," while state law limited a security interest in after-acquired consumer goods to those acquired by the debtor within ten days after the secured party gives value. Before the court was the question of whether this disclosure sat-

isfied the command of § 226.8(b)(5) that security interests in after-acquired property "be clearly set forth." [1] Disapproving of the conditional nature of the creditors after-acquired property clause, the court held that § 226.8(b)(5) required disclosure that after-acquired property *will* be subject to the security interest. Furthermore, the court ruled that the creditor must explain to the borrower the ten-day limitation of state law to inform him that any consumer goods he may acquire within ten days of the loan are subject to the security interest, while those acquired after that date are not.

It bears repeating here that *Pennino* and *Pollock* involved different sections of Regulation Z. Many of the cases dealing with the relationship between the TILA and state law have involved both § 226.6(c) and § 226.8(b)(5), for the adequacy of a creditor's description of the extent of his security interest and his claim to after-acquired property or security for future advances has arisen often. The two sections do differ, in that delineation of the content of the § 226.8(b)(5) "clearly set forth" provision is an inquiry into what disclosure is affirmatively required by TILA, whereas § 226.6(c) comes into play only when the creditor elects to include in his disclosures information not affirmatively required by the statute and defines the manner in which such information must be presented. The two sections are alike in the sense that the determination of whether material has been "clearly set forth" and of whether added terms are confusing or misleading involve similar perspectives. Recognition of this similarity does not, however, obscure the fact that § 226.8(b)(5) is a specific requirement that the fact of a claim to after-acquired property or security for future advances must be set forth in a clear fashion, while § 226.6(c) is a general prohibition against the inclusion of optional information in a confusing or misleading manner.

---

**1.** Section 226.8(b)(5) of Regulation Z provided, in pertinent part, that "[i]f after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth...."

*Pennino* and *Pollock* have seen further development within the Fifth Circuit. The instrument involved in *Pinkett v. Credithrift of America, Inc.*, 430 F.Supp. 113 (N.D.Ga.1977), contained a clause allowing the creditor to accelerate the amount due if the security was removed from the state, which rendered the entire loan void under the Georgia Industrial Loan Act.[2] The court characterized *Pennino* and *Pollock* as representing opposing principles, with the former only requiring the creditor to disclose the rights he claims in his note, while the latter requires him to disclose only those rights he can assert consistent with state law. Speaking in general terms of the relationship between the TILA and state law, rather than of any particular section of Regulation Z, the court sided with the *Pennino* position and rejected the debtor's argument that the conflict between the note and state law should have been disclosed. It stated as its rationale:

> The declared purpose of the Truth in Lending Act is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit,' 15 U.S.C. § 1601. Put simply, the consumer is entitled to know the terms on which a lender will extend him credit. The Act does not give the consumer the right to know all the creditor's rights and duties under state law. If the terms of the credit agreement violate that law, the consumer is free to resort to remedies provided by the state. It seems obvious to this court that if the Congress wanted it any other way, it would have explicitly said so. But if this court were to follow *Pollock* to its logical conclusion, the result would be the opposite: all notes which violated state law in the various areas pertinent to the Act would automatically give rise to a violation of the Act if the disclosure statements were consistent with the note.

> Enforcement of this laudable Act has become confusing enough, without en-

grafting onto it the laws of the fifty states. Georgia, like many other states, provides severe penalties for violation of its lending laws, and adding a penalty under the Truth in Lending Act solely for violation of the state's law would serve little purpose. It is true that in the *Pollock*-type situation the consumer is misled into thinking that the creditor has a greater security interest than he legally can enforce, and that state law would only intervene at the point where the creditor actually seeks to enforce that interest.... However, application of *Pennino* ... would at least insure that the consumer was aware of the rights the creditor intended to assert somewhere down the line, and to the thousands of consumers who never seek legal advice as to their state and federal rights, this is the most effective remedy the court can provide. This court therefore feels that the best solution is to allow the states to devise their own remedies for violations of their statutes and to confine the present Truth in Lending Act to its limited goal of giving consumers an opportunity to intelligently review the terms on which the lender intends to extend credit. This is of no small benefit to the consumer, since it not only allows him to compare the credit terms proposed by various lenders, but also gives him an opportunity to discover possible state law violations which would otherwise be hidden in the note.

430 F.Supp. at 117–18.

The Court of Appeals for the Fifth Circuit again addressed this issue in *Oglesby v. Blazer Financial Services, Inc.*, 622 F.2d 779 (5th Cir. 1980), where the creditor claimed in the security instrument the original security as security for any future indebtedness of the borrower to the creditors. A state regulation, however, apparently limited a creditor's right to obtain security for future advances by providing that a security interest in property terminated as the debt originally incurred with respect to the

**2.** Ga.Code Ann. §§ 25–301 *et seq.*

item was paid.[3] The borrower argued that the creditor's failure to disclose this state law limitation amounted to a violation of § 226.6(c). Noting two federal district court cases which had interpreted the regulation not as a legal limitation but only as a guideline, the court held that its nondisclosure did not violate Regulation Z:

> TILA does not require a creditor to disclose every potential or questionable state law defense to rights claimed in the loan agreement, especially when that defense has been expressly negated by prior court decision, albeit not courts of ultimate authority.

622 F.2d at 782. The court specifically declined to resolve "any conflicts which might exist . . ." between its decisions in *Pennino* and *Pollock*. 622 F.2d at 782.

The Court of Appeals for the Fifth Circuit has since limited its *Pollock* holding, in the wake of the Supreme Court's decision in *Ford Motor Credit Co. v. Milhollin, supra.* The *Milhollin* Court called for judicial deference to Federal Reserve Board staff opinions construing the TILA or Regulation Z as dispositive unless "demonstrably irrational." 444 U.S. at 566, 100 S.Ct. at 797. In *Smathers v. Fulton Federal Savings and Loan Association,* 653 F.2d 977 (5th Cir. 1981), the borrower attacked the adequacy under § 226.8(b)(5) of a disclosure statement which provided that "[a]fter-acquired property may be subject to the deed to secure loan," whereas the deed to secure loan subjected after-acquired fixtures to the realty involved to the security deed. The debtor, relying on *Pollock*, claimed that the lender should have used the word "will" instead of "may" in the disclosure statement as to the security interest in after-acquired property, and that the state law limitation on the security interest in after-acquired personal property to that acquired by the debtor within ten days of execution of the deed should also have been disclosed.

Relying on an information letter published by the Federal Reserve Board staff,[4] the court held that use of the word "may" instead of "will" in disclosing the existence of an after-acquired property clause was permissible, and overruled *Pollock* to that extent. The court avoided the question of disclosure of the state ten-day limit, however, by concluding that the deed to secure the debt asserted a security interest only in after-acquired realty, and thus the ten-day limit on personal property did not apply.

Other courts have addressed this question, both in the context of § 226.6(c) and § 226.8(b)(5), often dealing with both sections in the same case. The loan papers in *Montoya v. Postal Credit Union,* 630 F.2d 745 (10th Cir. 1980), provided for a security interest in after-acquired property but failed to disclose the state limit on such a security interest to property the borrower acquired within ten days after the lender gives value. Deferring to two Federal Reserve Board letters the net effect of which was that state law limitations on the extent of an after-acquired property clause need not be disclosed under § 226.8(b)(5) where the lender does not claim a security interest in *all* after-acquired property,[5] the court held that § 226.8(b)(5) did not require disclosure of the state law consequences of the security interest in after-acquired property asserted in the case:

> Again, we are concerned with the *description* of the security interest. This is what the Act and the regulation focus upon. The security interest was here described as including an interest in after-acquired property and this was the *fact* to be disclosed. The state law limitations on that security interest, and the legal consequences under different circumstances, are quite a different matter. There are many statutory provisions and case law relating to real property mort-

---

3. Rule 120–1–14–13 of the Rules of the Comptroller General, promulgated under the Georgia Industrial Loan Act, Ga.Code Ann. § 25–306.

4. Federal Reserve Board Letter No. 1053, Cons. Cred. Guide ¶ 31,393 (CCH) (May 28, 1976).

5. Federal Reserve Board Letter No. 983, Cons. Cred. Guide ' 31,323 (CCH) (December 30, 1975); Federal Reserve Board Letter No. 1053, Cons. Cred. Guide ' 31,393 (CCH) (May 28, 1976).

gages, deeds of trust, and second deeds of trust. The enforcement remedies and creditors' rights under these statutes and under the case law present a comparable problem. There is just as much reason to include these elements of New Mexico law as to include the ten-day limit on after-acquired property.

630 F.2d at 748.

The lender in *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976), asserted in the loan agreement a security interest in "[a]ll of the consumer goods of every kind ..." thereafter acquired by the borrowers, while state law again contained the ten-day limitation. The court held that this description failed to set forth clearly the security interest in violation of § 226.8(b)(5). It also found misleading a clause in the agreement which purported to subject to the lender's security interest all the consumer property in the debtors' residence regardless of who owned them, while state law precluded a security interest in goods in which the debtors had no interest.[6] The disclosure statement in *Kenney v. Landis Financial Group, Inc.*, 349 F.Supp. 939 (N.D.Iowa 1972), revealed a security interest in after-acquired consumer goods, and neglected to state the state law ten-day limitation. Although it refused to find this violative of § 226.8(b)(5), the court held that the disclosure regarding after-acquired consumer goods was additional information stated so as to mislead or confuse the customer contrary to the mandate of § 226.6(c). Similarly, the security agreement in *Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121 (S.D.Ill.1974), attempted to create a security interest in all the debtor's after-acquired consumer goods, while state law imposed the ten-day limit. With "little hesitancy," the court found that the creditor's failure to set forth this limitation violated § 226.8(b)(5) and was misleading under § 226.6(c) as well. 369 F.Supp. at 1123. Failure to disclose the ten-day limit on a security interest claimed in all of the borrower's consumer goods was also found

to violate § 226.6(c) in *Cadmus v. Commercial Credit Plan, Inc.*, 437 F.Supp. 1018 (D.Del.1977) (reference in disclosure statement to a "security interest under the Uniform Commercial Code" was not adequate to apprise the borrower of the ten-day limitation), and in *Ballew v. Associated Financial Services Co.*, 450 F.Supp. 253 (D.Neb. 1976).

Lastly, a borrower's complaint that the lender failed to disclose the ten-day limit of the state law on security interests in after-acquired property was held to state a claim under both § 226.8(b)(5) and § 226.6(c) in *Ecenrode v. Household Finance Corp.*, 422 F.Supp. 1327 (D.Del.1976), where the court remarked that "[e]rroneous statements of a creditor's rights against the debtor are not the kind of 'meaningful disclosure' contemplated by Congress ..." in passing the TILA. 422 F.Supp. at 1331.

Using these cases and the policy of the TILA as guidance, the Court must determine whether the plaintiff's complaint alleging the defendants' failure to disclose the state law limitation on the absolute acceleration right noted on the face of the Agreement states a claim on which relief may be granted under § 226.6(c). *Pollock, Tinsman, Kenney, Johnson, Ballew, Cadmus* and *Ecenrode* indicate that it does. Defendants argue that *Pennino, Pinkett, Oglesby* and *Montoya*, as well as the Supreme Court's discussion in *Milhollin*, dictate that it does not.

Since *Milhollin* makes the Federal Reserve Board's interpretation and application of the TILA dispositive unless demonstrably irrational, and *Montoya* relied heavily on Federal Reserve Board letters in reaching its decision that disclosure of a state's ten-day limit on a security interest in after-acquired property was not required by § 226.8(b)(5) under the facts of that case, the Court's inquiry must begin in a similar fashion. *Montoya* emphasized Federal Re-

---

**6.** The *Tinsman* case also illustrates the interrelationship between § 226.8(b)(5) and § 226.-6(c), for after the Court of Appeals found a

violation of the former, it declined to consider the § 226.6(c) issue, on which the district court's decision had rested.

serve Board Letter No. 1053,[7] in which the staff responded to an inquiry on whether a claim to a security interest in all after-acquired property without mention of the ten-day limit of state law violated either § 226.6(c) or § 226.8(b)(5). The staff related:

It appears from your letter that these creditors are disclosing a security interest in 'all after-acquired property' or 'all after-acquired property including all attachments, substitutions, and replacements.' If, in fact, the applicable State law only permits acquisition of a security interest in after-acquired property acquired within a certain period of time, then such a statement would be improper under Regulation Z. As our previous letter indicates, a simple disclosure of the fact that after-acquired property may be subject to the security interest would be sufficient to comply with the clear language of § 226.8(b)(5), without an explanation of the various conditions and limitations on such interests which may be imposed by the applicable State law. However, the fact that the creditor need not disclose such limitations and conditions does not mean that the creditor may affirmatively misstate the scope of the security interest, in disregard of those limitations. If, in fact, the creditor discloses an interest in 'all after-acquired property,' when the interest would actually attach only to property acquired by the borrower within a certain period of time, such a disclosure would be inaccurate and misleading in violation of Regulation Z.

Thus, a claim to an absolute interest in all after-acquired property, when state law renders the interest less than absolute and limits its extent, amounts to a misstatement of the lender's interest in a misleading fashion. Disclosure of a security interest in "all after-acquired property" with no indication of a state law ten-day limitation was found to be misleading under § 226.8(b)(5) in *Franklin v. Community Federal Savings & Loan Association,* 629 F.2d 514 (8th Cir. 1980). Apparently, it is the position of the Federal Reserve Board staff that a claim to an absolute right in a disclosure statement when a state law prescribes certain limitations which make the right less than absolute and not as broad as the creditor's disclosure would lead the borrower to believe, amounts to an affirmative misstatement in disregard of the limitations of state law and is thereby potentially inaccurate and misleading. Under this interpretation, the instant defendants' disclosure of an absolute acceleration right in disregard of the ten-day grace period similarly constitutes an affirmative misstatement of the scope of their acceleration right and is potentially inaccurate and misleading in violation of § 226.6(c).

In *Milhollin, supra,* the Supreme Court adopted the opinion of the Federal Reserve staff in holding that the existence of an acceleration clause need not be disclosed on the face of a credit agreement if the creditor rebates unearned finance charges in connection with prepayment upon acceleration using the same method as for voluntary prepayment and that method has been properly disclosed pursuant to § 226.8(b)(7) of Regulation Z. Thus, specific disclosure of acceleration rebate policy is required by § 226.8(b)(4) only if that policy varies from the custom with respect to voluntary prepayment rebates, since in such a case the acceleration rebate amounts to the sort of default charge required to be disclosed by that section. 444 U.S. at 562. Among the staff opinions relied on by the Court was Information Letter No. 1324.[8] In that let-

---

7. Cons. Cred. Guide ¶ 31,393 (CCH) (May 28, 1976).

8. Federal Reserve Board Letter No. 1324, Cons. Cred. Guide ¶ 31,827 (CCH) (November 14, 1978). This letter, as well as Federal Reserve Board Letter No. 1113, Cons. Cred. Guide ¶ 31,459 (CCH) (September 22, 1976), discussed in the text of the memorandum accompanying note 9, *infra,* was an unofficial staff interpretation of Regulation Z. As such, they may deserve less judicial deference than do official staff interpretations. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566–567 n.9 and n.10, 100 S.Ct. 790, 797–98 n.9 and n.10, 63 L.Ed.2d 22 (1980). Nonetheless, they do illus-

ter, the staff addressed the question of whether disclosure is required under § 226.-8(b)(4) where a credit agreement gives the creditor the right to accelerate the debt due upon the borrower's default, including unearned finance charges, but state law requires a rebate of unearned finance charges in such circumstances. Following the rule eventually adopted in *Milhollin*, the staff concluded that if a creditor in fact rebates unearned finance charges upon acceleration in accordance with state law and, as a result, the borrower receives the same rebate as would be received under the rebate method for voluntary prepayment, disclosure of which is required by § 226.8(b)(7), then prepayment upon acceleration would not involve any default charge and disclosure of the method of computing the rebates would not be required by § 226.-8(b)(4). On the other hand, if the creditor, pursuant to his contract right or because of the method prescribed by state law, retains any unearned finance charges upon acceleration which would not be retained under the disclosed voluntary prepayment method, such retainer would constitute a default charge and must be disclosed. The staff stated further:

> There is an additional consideration which the staff would also call to your attention. Even where a creditor's policy is to rebate unearned finance charges in the event of prepayment upon acceleration in accordance with State law, so that no charges are retained in excess of those indicated by the disclosed rebate method, a statement in the underlying contract which apparently gives the creditor the right to retain such unearned finance charges may mislead a customer into believing that there will be no rebate upon acceleration. Such a contractual provision, if supplied to a customer with rebate method disclosure required by § 226.-8(b)(7) (*e.g.*, as part of a combined note and disclosure form or where separate note and disclosure forms are presented to the customer simultaneously), would

constitute additional information within the meaning of § 226.6(c) of Regulation Z. If this additional information is misleading or confusing or contradicts, obscures, or detracts attention from the required § 226.8(b)(7) disclosure, there would be a violation of the regulation. Of course, the capacity of the additional information to mislead or confuse can only be determined by reference to all of the circumstances of a particular case.

Again, the staff appears to view as potentially misleading disclosure of a right broader than that actually allowed under state law. Since disclosure of an absolute acceleration right may mislead the borrower into believing that there is no ten-day grace period limiting this right, such disclosure may be misleading or confusing.

In Federal Reserve Board Letter No. 1113,[9] the staff discussed the validity of two provisions included by a creditor in an open end credit card agreement which stated that the holder of the card waived as against the creditor all claims and defenses against a seller of the merchandise or services "[e]xcept as otherwise provided by law," and which granted the bank a lien on any of the debtor's accounts with it "[w]here permitted by law." The creditor included these clauses to obtain waiver of defenses and right to set-off to the fullest extent allowed by a federal statute which limited the effect of such clauses. The staff concluded that either of these provisions could violate § 226.6(c) because they were "clearly capable" of misleading customers as to their congressionally mandated rights under the federal statute involved. If such terms which allude to possible limitations by other laws are potentially misleading, then a claim to an absolute acceleration right with no mention of a state law restriction on that right may certainly be so as well.

*Pennino* and *Pinkett* stand for a policy which conflicts with this conclusion. Those courts saw the TILA as having only the

---

trate the Board's interpretation of Regulation Z, and Letter 1324 itself was relied on by the *Milhollin* Court.

9. See note 8, *supra*.

limited goal of giving consumers an opportunity to review intelligently the terms on which a lender intends to extend credit, rather than that of informing borrowers of their rights under state law. The Court concludes, however, that a borrower is denied the opportunity to review intelligently the lender's credit terms when the latter affirmatively misstates the scope of his right to accelerate upon default of one installment, and does so in a way which could mislead the borrower into believing he has no grace period in which to cure such a default. This possibility of confusion and deception is acutely present in the instant case, where the debtor's right at stake is one which expires in a short period of time if he does not make payment, and a creditor with superior knowledge of its rights could merely allow the ten days to pass, then accelerate the debt, leaving the debtor without remedy. This is hardly the sort of "informed use of credit" sought by the TILA. Informed use of credit arises from an awareness of the costs thereof. A prospective borrower who is misled as to the scope of a creditor's acceleration right is not made aware of the true cost of the credit. He can not efficiently shop around for the most favorable credit terms when he is, innocently or not, deceived into believing that a lender is entitled to rights not allowed under state law, and his choice of lenders will be colored by an inaccurate reading of the possibilities. Moreover, the nature of the state law right at stake in the instant action distinguishes it from *Pinkett*. There, the court saw no need to add a federal TILA remedy to protections already provided a debtor by a state law which declared void the type of loan involved in the case, since the borrower could merely rely on the state law at the point where the creditor sought to enforce the loan. Here, however, state law provides no specific remedy for the assertion of an absolute right of acceleration. In fact, the state limitation would be of no aid whatsoever to a borrower who, having been misled into believing he could not cure a late default, faces acceleration of the entire debt by the lender after the ten-day grace period has expired.

*Oglesby* may be distinguished from the instant action, for the validity of and applicability of the state law ten-day grace period has not been negated by prior court decision. *Montoya* is also distinguishable, for there the lender had not claimed the sort of absolute interest in all after-acquired property analogous to the absolute acceleration right disclosed herein. Also, that court's desire to avoid the "informational overload" caused by too much disclosure is not present with the same force in this case, for there the court was delineating the information required to be disclosed in all instances by a creditor under § 226.-8(b)(5), while the Court here attempts only to determine the effect of § 226.6(c)'s proscription of misleading information in disclosures not required by the TILA but added by the creditor. *Milhollin* indicated that the balance between complete disclosure and the need to avoid informational overload is to be struck by the Federal Reserve. Here that balance swings in the plaintiff's favor. Moreover, the Court emphasizes the limited extent of this holding, for the Court concludes only that the disclosure of an absolute acceleration right without mention of a clear state limitation on that right, where that state limitation provides the consumer with a grace period which expires within a short time and if expired provides him with no further recourse, is potentially misleading and thus plaintiff's complaint sufficiently states a cause of action to survive defendants' motions to dismiss.

An appropriate order shall issue.