Thomas H. **PARRY, et al., Plaintiffs,**

v.

The **FORD MOTOR CREDIT COMPANY, Defendant.**

**No. C–1–83–535.**

United States District Court, S.D. Ohio, W.D.

Nov. 18, 1983.

and defendant's replies (docs. 13, 16, and 18). Defendant's first motion for partial summary judgment (doc. 4) seeks the dismissal of plaintiffs' federal claim. Defendant's second motion (doc. 5) seeks to dismiss plaintiffs' pendent state claims without prejudice to their being refiled in state court.

This is a class action, seeking declaratory and injunctive relief under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, and the Ohio Retail Installment Sales Act, (ORISA), Ohio Revised Code, §§ 1317.-01 *et seq.* The operative facts, undisputed for purposes of defendant's motions, disclose that on April 16, 1982 plaintiff Thomas H. Parry entered into a lease agreement with Kerry Ford, Inc. ("Kerry"), not a party to this action, under which he agreed to lease a 1982 Ford Mustang. Immediately after its execution, Kerry assigned the lease to defendant Ford Motor Credit Company ("Ford Credit") in accordance with the assignment provisions of the lease. After the first payment, plaintiff was to make all his lease payments to Ford Credit as assignee, rather than to Kerry as lessor. In June 1982, plaintiff defaulted, failing to make his monthly payment in a timely fashion. He was assessed and paid a late charge of $8.77 in accordance with paragraph 13 of the lease, which provides:

> *Late Charge:* The lessee will pay a late charge on each payment that is not made within ten days after it is due. The charge is *5%* of the payment or *$10*, whichever is less.

Plaintiffs then filed this action, alleging that the late charge violated ORISA and TILA.

ORISA limits late charges in a lease transaction to $3. O.R.C. § 1317.06(B)(2). Plaintiff asserts that the $8.77 late charge assessed by defendant violates the state law. With respect to his federal claim, plaintiff points out that the Consumer Credit Protection Act of 1976, which is part of TILA, requires accurate disclosure of late payment charges. 15 U.S.C. § 1667a(11). Plaintiffs maintain that a late

Steven C. Shane, Cincinnati, Ohio, for plaintiffs.

Daniel J. Hoffheimer, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge.

This matter came on for hearing on defendant's motions for partial summary judgment (docs. 4 and 5), plaintiffs' memoranda in opposition (docs. 11, 17, and 19),

payment charge which violates state law is inaccurate and therefore a violation of federal disclosure provisions. In other words, to prevail on their federal claim, plaintiffs must first prove that the defendant's late charge provision violates ORISA.

Arguing that plaintiffs' federal claim is pendent to a state claim, defendant maintains that even if the state claim were valid, federal jurisdiction cannot be based upon a state claim. In other words, it maintains that TILA does not incorporate state law with respect to late charges and accordingly, the federal claim must be dismissed.

Plaintiffs urge, however, that public policy requires that TILA be read to require that disclosure terms be lawful under state law. They refer us to Congress' statement of purpose in enacting TILA which, among other things, states:

> It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, . . . .

15 U.S.C. § 1601(a). Subsection (b), enacted in 1976 and relating to automobile leases, provides:

> The Congress also finds that there has been a recent trend toward leasing automobiles and other durable goods for consumer use as an alternative to installment credit sales, and that these leases have been offered without adequate cost disclosures. It is the purpose of this subchapter to assure a meaningful disclosure of the terms of leases ... so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments and consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure *meaningful* and *accurate* disclosures of lease terms and advertisements, (emphasis added).

15 U.S.C. §§ 1667a through (e) requires that a lessor provide certain disclosures to the lessee at the time of the consummation of the lease agreement:

> Each lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable:
>
> (11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments or early termination.

The federal statute therefore clearly requires accurate disclosures so that the consumers of credit can make informed and meaningful choices.

Although we find plaintiffs' argument appealing, we conclude that it is unsupported by law. Even if we assume that the late charge disclosed by defendant violates state law, the violation of state law does not itself constitute a TILA violation unless TILA independently proscribes the activity. 12 C.F.R. § 226.1(a)(2); *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 371 (5th Cir.1976). All that the TILA requires is disclosure of relevant information so that consumers may make informed choices. *Vega v. First Federal Savings & Loan Association of Detroit*, 622 F.2d 918, 919 (6th Cir.1980). Obviously, defendant's late charge term clearly informs consumers of the effect of late payments, thereby permitting such an informed choice. Neither TILA nor Regulation Z nor any Federal Reserve Board ruling limits the amount of the late charge or requires that the late charge terms comply with state law. TILA "provides for full disclosure of credit charges, rather than regulations of the terms and conditions under which credit may be extended." H.R.Rep. No. 1040, 90th Cong., 2d Sess. 2, reprinted in 1968 U.S.Code Cong. & Ad.News 1962, 1963. *See also* Federal Reserve Board Letter, Feb. 10, 1972 (CCH Consumer Credit Guide ¶ 30,806); *Pinkett v. Credithrift of America, Inc.*, 430 F.Supp. 113, 117–18 (N.D.Ga. 1977).

Plaintiffs rely upon a number of cases involving disclosure of security interests. We do not find these cases apposite. Security interests are created by state law and therefore can be accurately described only by reference to state law. Security interests are thus an exception to the generally "pure disclosure" nature of TILA. Moreover, regulations enacted pursuant to TILA require identification of the type of security interest held. 12 C.F.R. § 226.-8(b)(5). "The description of that security interest should accurately reflect the type of security interest that may be legally required under the appropriate state law." Federal Reserve Board Staff Opinion Letter, CCH Consumer Credit Guide ¶ 31,515 (1974). As noted earlier, there are no similar regulations or letters requiring that late charges comply with state law.

The Supreme Court has held that disclosure of an acceleration clause is not required by TILA. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). TILA contains no express requirement that acceleration clauses be disclosed. In addition, the Federal Reserve Board consistently interprets the statute and pertinent regulations as not requiring disclosure. The Supreme Court reasoned that it ought to refrain from substituting its own lawmaking for that of the Federal Reserve Board so long as the Board's lawmaking was not irrational. *Id.* at 562, 100 S.Ct. at 795.

█ We do not have Federal Reserve Board rulings on which to rely with respect to late charges. Nonetheless, we find the Supreme Court's decision in *Milhollin* helpful. The Court stated:

[A] court that tries to chart a true course to [TILA's] purpose embarks upon a voyage without a compass when it disregards the [Board's] views. The concept of "meaningful disclosure" that animates TILA ... cannot be applied in the abstract. *Meaningful* disclosure does not mean *more* disclosure. Rather it describes a balance between "competing considerations of complete disclosure ... and the need to avoid [informational overload]." And striking the appropriate balance is an empirical process that entails investigation into consumer psychology and that presupposes broad experience with credit practices. Administrative agencies are simply better suited then courts to engage in such a process (emphasis original; citations omitted).

*Id.* at 568–69, 100 S.Ct. at 798. Accordingly, we conclude that in the absence of express statutory mandate, it is not our role to graft onto TILA additional requirements based upon state law unless it is apparent that disclosure cannot be accurate or meaningful without reference to state law.

█ Under the facts of this case, it is undisputed that the disclosure in paragraph 13 of the lease accurately disclosed how defendant would calculate late charges. The plaintiffs knew precisely what the effect of late payment would be by virtue of that disclosure. Plaintiffs therefore had the information necessary for an informed decision. Accordingly, we decline to hold that defendant's disclosure of the late charge—regardless of whether that charge violates state law—violates TILA.

We conclude, therefore, that plaintiffs have not stated a federal claim upon which relief can be granted in its first count. Accordingly, we find defendant's motion well-taken as there are no genuine issues of material fact and summary judgment as a matter of law should be granted to the defendant on plaintiffs' federal claim.

We now turn to defendant's second motion, seeking partial summary judgment on plaintiffs' pendent state claims without prejudice to refiling in state court. Defendant also asks that it be allowed to dismiss voluntarily its counterclaims without prejudice to refiling in state court if we should grant its second motion for partial summary judgment.

Defendant asserts that because the complaint fails to state a federal claim upon which relief can be granted, this Court has no jurisdiction and should dismiss the pendent state claims.

The Supreme Court stated in *United Mineworkers of America v. Gibbs*, the lead case on pendent jurisdiction:

[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well (footnote omitted).

383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Having dismissed the federal claim in this action, we conclude it would be inappropriate to retain jurisdiction over plaintiffs' state claim.

Accordingly, defendant's motion for partial summary judgment on plaintiffs' state claim is granted, without prejudice to plaintiffs' refiling their claim in state court. In addition, defendant's counterclaims are voluntarily dismissed without prejudice to refiling in state court.

It is hereby ordered that defendant's motion for partial summary judgment on plaintiffs' federal claim is hereby granted, and judgment shall be entered against plaintiffs and for defendant on the federal claim. Defendant's motion for partial summary judgment dismissing plaintiffs' pendent state claims and defendant's counterclaims without prejudice to refiling either in the state court is hereby granted.

SO ORDERED.