**David GAMBARDELLA, et al.,**
**Plaintiffs-Appellees,**

v.

**G. FOX & CO., Defendant-Appellant.**

**No. 1188, Docket 83–7063.**

United States Court of Appeals,
Second Circuit.

Argued April 28, 1983.

Decided Aug. 9, 1983.

Bourke G. Spellacy, Hartford, Conn. (Updike, Kelly & Spellacy, P.C., Hartford, Conn., Sharon L. Aresco, Emily G. Holcombe, Deborah A. Monteith, Hartford, Conn., of counsel), for defendant-appellant.

David M. Lesser, New Haven, Conn. (Clendenen & Lesser, P.C., William H. Clendenen, Jr., New Haven, Conn., of counsel), for plaintiffs-appellees.

Before LUMBARD, NEWMAN and PRATT, Circuit Judges.

LUMBARD, Circuit Judge:

G. Fox & Co. (G. Fox), a department store chain, appeals from orders of the District Court for the District of Connecticut, Cabranes, J., granting Mr. and Mrs. David Gambardella summary judgment, and awarding them statutory damages of $100 and attorney's fees of $6,222, in their action against G. Fox alleging violations of federal and state truth-in-lending laws. The Gambardellas, Connecticut residents, have an open-end credit account with G. Fox. The Gambardellas allege that the monthly account statements G. Fox sent them between September 23, 1980 and September 22, 1981 violated the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., and coordinate Connecticut statutes, Conn. Gen.Stat. §§ 36–393 et seq., in numerous respects. Judge Cabranes, on September 20, 1982, granted the Gambardellas summary judgment on two alleged violations, thus finding it unnecessary to rule upon four additional claims. We believe that G. Fox's account statements complied with applicable laws both in those points ruled upon by Judge Cabranes and those not ruled upon. We therefore reverse the judgment, vacate the award of attorney's fees, and remand with directions to dismiss the complaint.

Congress has authorized the Federal Reserve Board (FRB) to exempt from compliance with TILA, and with the implementing regulations promulgated by the FRB, 12 C.F.R. §§ 226.1 et seq. (Regulation Z), "any class of credit transactions within any State" that the FRB determines to be subject to enforceable state law requirements "substantially similar" to federal disclosure requirements. 15 U.S.C. § 1633. Accordingly, the FRB in 1970 exempted from compliance with TILA and Regulation Z most classes of credit transactions in Connecticut, including open end credit accounts. 12 C.F.R. § 226.55(e). Under the exemption the federal disclosure requirements applicable to Connecticut credit transactions are those imposed by Connecticut's Truth-in-Lending Act, Conn.Gen.Stat. §§ 36–393 et seq., and implementing regulations promulgated by Connecticut's Banking Commissioner, except to the extent that state law requires disclosures not required by federal law. 12 C.F.R. § 226.12(c)(2). *See Ives v. W.T. Grant Co.,* 522 F.2d 749, 753 (2d Cir. 1975); *Grey v. European Health Spas, Inc.,* 428 F.Supp. 841, 843 n. 1 (D.Conn.1977). Since Connecticut law is the law applicable to the Gambardellas' claims, primary citation in this opinion will be made to Connecticut statutes and regulations, and parallel citations, in parentheses, will be made to the corresponding provisions of federal law. The federal and state laws are, however, substantially identical, and are directed toward the same goals, and thus judicial and administrative interpretations of TILA and Regulation Z are relevant here. *See Bizier v. Globe Fin. Servs., Inc.,* 654 F.2d 1, 2 (1st Cir.1981).

In 1980 Congress substantially amended TILA by enacting the Truth in Lending Simplification and Reform Act (TILSRA), passed as Title VI of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L. No. 96–221, § 601, 94 Stat. 168 (1980). Because G. Fox issued all of the challenged account statements prior to TILSRA's effective date of October 1, 1982,[1] this case must be decided under TILA, Regulation Z, and Connecticut law as they stood prior to TILSRA's enactment.

### A.  Claims Ruled Upon.

1.  *Amount of Payment Necessary to Avoid Additional Finance Charges.*

■ G. Fox imposes a monthly finance charge upon the average daily balance in its customers' accounts. The finance charge is assessed at a rate of 1.25% upon the sum of the customer's daily balances during the monthly billing cycle divided by the number of days in the cycle. No finance charge is assessed, however, if the customer's balance at the start of the billing cycle is $3 or less. G. Fox informs customers of its finance charge policy with disclosures on both the front and the reverse of its account statements.[2] The front advises customers: "TO

AVOID ADDITIONAL FINANCE CHARGES PAY THE NEW BALANCE IN FULL BY THE PAYMENT DUE DATE"; the reverse, however, discloses that "No FINANCE CHARGE is assessed in any billing period in which the 'Previous Balance' . . . is $3 or less." The terms "new balance" and "previous balance" are defined by regulation. New balance is the account balance at the close, and "previous balance" is the account balance at the start, of a billing cycle. § 36–395–6(b)(1)(i), (ix), (§ 226.-7(b)(1)(i), (ix)). Because the balances in an account at the close of a given billing cycle, and at the start of the immediately succeeding cycle, are the same, a customer's "new balance" at the close of a cycle is carried into the next billing cycle as his "previous balance." When this relationship between "new balance" and "previous balance" is kept in mind, a contradiction between G. Fox's two disclosures becomes apparent. The front states without qualification that the "new balance" disclosed on the periodic statement must be paid in full to avoid additional finance charges in the subsequent billing period. The reverse, however, reveals that additional finance charges will not be assessed, even if no payment is made, if the "new balance" is $3 or less.[3] The Gambardellas claim, and the district

1. TILSRA required the FRB to promulgate implementing regulations at least one year prior to the effective date of the Act and authorized any creditor to comply with the revised regulations prior to the effective date. Pub.L. No. 96–221, § 625, 94 Stat. 185–86 (1980). The FRB accordingly revised Regulation Z, effective April 1, 1981, 46 Fed.Reg. 20,848 (1981), but with compliance being optional until the Act's effective date. G. Fox does not claim to have complied with TILSRA between April 1 and September 22, 1981.

2. A G. Fox account statement, both front and back, has been reproduced as an appendix to the court's opinion. The reader may find it

useful periodically to refer to the reproduced statement.

3. G. Fox's periodic statements specify a "payment due date" by which the customer must pay the new balance to avoid additional finance charges. Payment of all but $3 of the new balance by the payment due date will not prevent finance charges from being assessed in the subsequent billing period. Instead, unless the customer pays the new balance in full (or has a credit balance), finance charges will be imposed whenever the new balance is greater than $3. The following chart may help clarify the operation of G. Fox's finance charge policy:

| Ending Date of Billing Period | Previous Balance | Purchases | Payments | Finance Charge | Approx. Amount of Fin. Charge | New Balance |
|---|---|---|---|---|---|---|
| Jan. 1, 1981 | $ 0.00 | $100.00 | $ 0.00 | No | – | $100.00 |
| Feb. 1, 1981 | $100.00 | $ 0.00 | $97.00 | Yes | $.80 | $ 3.80 |
| March 1, 1981 | $ 3.80 | $ 0.00 | $ .90 | Yes | $.03 | $ 2.93 |
| April 1, 1981 | $ 2.93 | $150.00 | $ 0.00 | No | – | $152.93 |

As the chart makes apparent, when the customer's new balance is $3.00 or less, additional finance charges are not imposed regardless of

the amount of the average daily balance in the subsequent billing period.

judge ruled, that this contradiction violates Connecticut regulations governing the disclosure of information in periodic statements.[4] We disagree.

■ Creditors who maintain open-end credit accounts must, at the close of each billing cycle, provide their customers with account statements disclosing the information specified in Conn.Bank.Reg. § 36–395–6(b)(1), (§ 226.7(b)(1)). The required disclosures must be made "clearly, conspicuously, in meaningful sequence, ... and at the time and in the terminology prescribed." § 36–395–5(a), (§ 226.6(a)). The creditor may, if it chooses, include in its periodic statements additional information or explanations but such additional information may not be "stated, utilized or placed so as to mislead or confuse the customer or contradict, obscure or detract attention from the information required to be disclosed." § 36–395–5(b), (§ 226.6(c)). The district judge did not determine whether § 36–395–6(b)(1) requires disclosure of the amount of payment necessary to avoid additional finance charges. Instead, the judge ruled that the contradiction between G. Fox's statements rendered them "unclear and misleading," and placed them in violation of the regulations, regardless of whether disclosure was required or voluntary. We believe the judge should have determined, before making his ruling, whether § 36–395–6(b)(1) required G. Fox to disclose the information at issue. As § 36–395–5(a) & (b) establish different standards of review for required and additional disclosures, analysis of the Gambardellas' claim would have been facilitated by such a determination. We conclude that the amount of payment necessary to avoid additional finance charges is an additional, and not a required, disclosure.

Our analysis necessarily begins with the express language of the statute and regula-

tions. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 560, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980). Section 36–404(b)(9) & (10) of the Connecticut General Statutes (15 U.S.C. § 1637(b)(9) & (10)), specifies the information creditors must reveal about additional finance charges. The statute is implemented in Conn.Bank.Reg. § 36–395–6(b)(1)(ix), (12 C.F.R. § 226.7(b)(1)(ix)) ("Section 9"), which requires disclosure of:

the closing date of the billing cycle and the outstanding balance in the account on that date, using the term "new balance", ... accompanied by the statement of the date by which, or the period, if any, within which, payment must be made to avoid additional finance charges, except that the creditor may, at his option, and without disclosure, impose no such additional finance charges if payment is received after such date or termination of such period.

Although this language clearly requires creditors to disclose (1) the closing date of the billing cycle, (2) the "new balance," and (3) the payment due date, neither it, nor any other provision of the state or federal regulations, expressly requires disclosure of the amount of payment necessary to avoid additional finance charges.

The absence of an express disclosure requirement in the regulations is significant, although not conclusive, evidence that disclosure is not required. Regulation Z "cannot speak explicitly to every credit disclosure issue," *Milhollin*, 444 U.S. at 560, 100 S.Ct. at 794, and courts therefore must be prepared, in appropriate cases, to infer from the statutory and regulatory schemes, and from TILA's underlying policies, disclosure requirements beyond those expressly stated in the regulations.

The regulatory scheme strongly suggests that disclosure of the amount of payment

**4.** The Gambardellas do not claim that they were actually misled by the contradiction or by any other feature of G. Fox's periodic statements, or that they have suffered actual damages. It is well settled, however, that proof of actual deception or damages is unnecessary to a recovery of statutory damages under 15 U.S.C. § 1640(a). *See, e.g., Brown v. Mar-*

*quette Savings & Loan Assoc.*, 686 F.2d 608, 614 (7th Cir.1982); *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir.1982); *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3rd Cir.1979); *Lewis v. Walker-Thomas Furniture Co.*, 416 F.Supp. 514, 516 (D.D.C.1976).

necessary to avoid finance charges is not required. Particular regard must be paid § 36–395–6(b)(1)(v), (§ 226.7(b)(1)(v)), ("Section 5"), which requires creditors to disclose certain information about the methods used to compute finance charges. Section 5 requires disclosure of "each periodic rate . . . that may be used to compute the finance charge, whether or not applied during the billing cycle, and the range of balances to which it is applicable," but provides that "[i]f a creditor does not impose a finance charge when the outstanding balance is less than a certain amount, the creditor is not required to disclose that fact or the balance below which no such charge will be imposed." The balance at or below which finance charges are not imposed is, of course, equivalent to the maximum balance which need not be paid to avoid additional finance charges. Section 5 thus expressly authorizes creditors to withhold, for purposes of the disclosure it requires, the information the Gambardellas claim is implicitly covered by Section 9.

Sections 5 and 9 are in part directed toward different goals. Customers can use the interest rates disclosed under Section 5 to check the accuracy of finance charges already assessed. In contrast, disclosure of closing and payment dates, and of the account "new balance," under Section 9 helps customers to avoid new finance charges, and not to review past charges. The Gambardellas claim that this distinction establishes the irrelevancy of Section 5 to the proper interpretation of Section 9. They argue that Section 9 is intended to reveal the information consumers need to avoid additional finance charges, and that the regulation's goal will be thwarted if Sections 5 and 9 are interpreted in tandem. We do not agree. Whatever policies lie behind Section 9, the very existence of the Section 5 exemption reveals that the FRB was aware, when it drafted the regulations, that some creditors do not impose finance charges upon small balances. We therefore must presume that the FRB's failure expressly to require disclosure in Section 9 reflects informed choice, and not oversight. Indeed, since Section 5 includes a proviso expressly exempting from disclosure information otherwise covered by the clear language of the regulation, and since Section 9, giving the language its ordinary meaning, does not require disclosure of the information exempted from Section 5, we conclude that the FRB did not intend to require disclosure.[5]

---

**5.** On May 5, 1980 the FRB released a proposed revised version of Regulation Z implementing the newly enacted Truth in Lending Simplification and Reform Act. 45 Fed.Reg. 29,702 (1980). The proposed version of Regulation Z split the disclosure requirements of § 226.-7(b)(1)(ix) between two provisions, § 226.-5(c)(10) & (11), and required disclosure of:

(11) *Free-ride period.* The date by which or the time period within which the new balance must be paid in order to avoid the imposition of finance charges. *If only a portion of the new balance need be paid to avoid a finance charge, that amount must be disclosed.* The creditor may, at its option and without disclosure, impose no finance charge when payment is received after the specified date or time period.

45 Fed.Reg. at 29,738 (emphasis supplied). The language emphasized above seems to require disclosure of the range of balances upon which additional finance charges will not be imposed. In its commentary to proposed Regulation Z the Board stated that § 226.5(c)(11) was not intended to effect any "substantive change" to § 226.7(b)(1)(ix). The Gambardellas argue that § 226.7(b)(1)(ix) must therefore be read implicitly to require the disclosures expressly mandated by proposed § 226.-5(c)(11). Although we recognize that the Board's commentary to draft regulations published under TILSRA is relevant to interpretive issues under TILA, *see Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 216 n. 13, 101 S.Ct. 2266, 2272 n. 13, 68 L.Ed.2d 783 (1981), we do not think that the Board's statement concerning § 226.5(c)(11) conclusively interprets § 226.7(b)(1)(ix). The statement directly interprets not § 226.7(b)(1)(ix), but rather a proposed regulation upon which the Board was soliciting public comment. As the Board made its statement when it was still exploring § 226.-5(c)(11)'s ramifications, we are reluctant to accord the statement the same weight that is due the commentary to the Board's final announcement of revised Regulation Z. *Cf. Id.,* 452 U.S. at 215–17, 101 S.Ct. at 2271–73. In its subsequent draft of revised Regulation Z the Board decided to delete the language expressly requiring disclosure of the amount of payment necessary to avoid finance charges. On December 5, 1980 the FRB issued a second proposed draft which redesignated the relevant portion of

The policy behind TILA supports our interpretation of the regulations. Congress intended TILA to facilitate the informed use of credit by consumers, to protect consumers against inaccurate and unfair credit billing practices, and to enhance competition between credit extenders. *See* 15 U.S.C. § 1601. To these ends TILA requires creditors to disclose the information specified in the Act and Regulation Z. However, the "meaningful" disclosure TILA requires, *Milhollin,* 444 U.S. at 568, 100 S.Ct. at 798, should not be equated with complete disclosure of all credit terms of potential use to consumers. Instead, TILA requires the FRB to strike "a balance between 'competing considerations of complete disclosure ... and the need to avoid ... [informational overload].'" *Id.,* quoting S.Rep. No. 73, 96th Cong., 2d Sess. 3 (1979), U.S.Code Cong. & Admin.News 1980, pp. 236, 281. The FRB could reasonably have determined, when drafting Regulation Z, that required disclosure of the amount of payment necessary to avoid additional finance charges would create more confusion than benefits. The potential for confusion becomes apparent when one considers the statement G. Fox would have to make to satisfy the Gambardellas. The statement the Gambardellas challenge, "TO AVOID ADDITIONAL FINANCE CHARGES PAY THE NEW BALANCE IN FULL BY THE PAYMENT DUE DATE," though generally accurate, is misleading to consumers who have "new balances" of $3 or less. Those consumers need not make any payment to avoid additional finance charges. G. Fox could correct the inconsistency by stating: "To avoid additional FINANCE CHARGES pay the New Balance in full whenever the New Balance is more than $3." This latter statement, however, undoubtedly would cause many consumers to believe that payment of all but $3 of the "new balance" would eliminate finance charges in the subsequent billing period. Such is not the case.[6] Complete front-side disclosure would benefit only those few persons with new balances between $0 and $3. Beyond the deference we must give the regulations, we cannot say the FRB erred in declining to require disclosure of potentially confusing information that is of slight interest to a few consumers, and of importance to none.[7] *Cf. Pittman v. Money Mart, Inc.,* 636 F.2d 993, 995–96 (5th Cir.1981) (Full disclosure of creditor's late charge policy not required where disclosure would unduly complicate statements provided to consumers).

Because the amount of payment necessary to avoid additional finance charges is not a required disclosure, G. Fox's reverse-side statement, "No FINANCE CHARGE is assessed in any billing period in which the 'Previous Balance' ... is $3 or less," must be treated as an additional disclosure reviewable under § 36–395–5(b), (§ 226.6(c)). As an additional disclosure, the statement is a violation if it has been "stated, utilized or

---

§ 226.7(b)(1)(ix) as § 226.7(k) and required disclosure of:

    (k) *Free-ride period.* The date by which or the time period within which the new balance or any portion of the new balance must be paid in order to avoid the imposition of additional finance charges.

45 Fed.Reg. 80,699 (1980). The commentary to the December 5th draft gives no reason for the deletion in § 226.7(k) of the second sentence of § 226.5(c)(11). Proposed § 226.7(k) became, with minor syntactical changes, the first sentence of final regulation § 226.7(j). Thus the final TILSRA regulations do not expressly require disclosure of the range of balances upon which additional finance charges are not assessed. The fact that the FRB, during the revision process, considered and rejected language that expressly required disclosure, constitutes some evidence that disclosure is not required

by new § 226.7(j) or by previous § 226.-7(b)(1)(ix). *See Fox v. Standard Oil Co.,* 294 U.S. 87, 96, 55 S.Ct. 333, 337, 79 L.Ed. 780 (1935) (rejection of proposed amendment as relevant factor in statutory interpretation). In light of the meaning that the regulatory scheme seems to give § 226.7(b)(1)(ix), we doubt that the FRB deleted the second sentence of proposed § 226.5(c)(11) in the belief that it was superfluous.

**6.** *See* note 2, *supra.*

**7.** We must emphasize that G. Fox's finance charge policy does not authorize consumers with new balances between $0 and $3 to withhold payment. Although consumers with such balances are not subject to additional finance charges, they must make some payment by the payment due date to avoid delinquency.

placed so as to mislead or confuse the customer or contradict, obscure or detract attention from the information required to be disclosed." This regulation states first that the creditor may not "mislead or confuse the customer." Second, it states that the additional disclosure may not "contradict, obscure or detract attention from" information required to be disclosed. Addressing the second prohibition first, it is readily apparent that G. Fox's reverse-side statement does not "contradict, obscure or detract attention from" any required disclosure. Section 9, (§ 36–395–6(b)(1)(ix)), *supra,* requires disclosure of only (1) the closing date, (2) the new balance, and (3) the payment due date. An additional disclosure of the circumstances in which additional finance charges are not assessed cannot impair the customer's understanding of the dates and balances disclosed under Section 9. Further, we believe that the first part of § 36–395–5(b) proscribes only presentations of additional information that mislead or confuse the consumer in his understanding of *information required to be disclosed. Accord, Stewart v. Ford Motor Credit Co.,* 685 F.2d 391, 394 (11th Cir.1982); *Fox v. Heilig-Meyers Co.,* 681 F.2d 212, 214 (4th Cir.1982).[8] The focus of TILA is upon the clear and conspicuous disclosure of information specified by statute and regulation. Section 36–395–5(b) should not be read to depart from the Act's basic pattern by authorizing courts to premise liability upon an unclear presentation of optional

information.[9] G. Fox's reverse-side statement certainly does not violate the regulation under our interpretation. Even if the statement confuses consumers about the payment necessary to avoid finance charges (and we doubt that it does), it could not possibly confuse or mislead anyone about the information G. Fox discloses under Section 9. Since, then, the only possible confusion relates to an additional, and not to a required, disclosure, no violation has occurred.[10]

### 2. *Notice of Reverse-Side Disclosures.*

■ A creditor may, if it chooses, place certain required disclosures upon the reverse of its periodic statements. 12 C.F.R. § 226.7(c), (§ 36–395–6(c)). If a creditor exercises this option, as G. Fox has done, it must disclose that fact to consumers. Section 226.7(c)(4), (§ 36–395–6(c)(4)), provides:

> If the creditor exercises any of the options [for reverse-side disclosure] provided for under this paragraph, the face of the periodic statement shall contain one of the following notices, as applicable: "*NOTICE:* See reverse side for important information" . . .

Section 226.7(c)(4), as it appears in the Code of Federal Regulations, sets the word "*NOTICE*" apart from the remainder of the required notice by printing it in bold, italicized capitals. The remainder of the notice, in contrast, is not italicized and, with the

**8.** In *Ives v. W.T. Grant Co.,* 522 F.2d 749, 761 n. 29 (2d Cir.1975), we stated that "(d)escribing a security interest when there is none may . . . violate Conn.Regs. § 36–395–5(b) . . . because it would constitute additional but misleading information." Our statement in *Ives* is consistent with the interpretation we now give § 36–395–5(b). Because the regulations require disclosure of security interests, *see* § 36–395–7(b)(5), (§ 226.8(b)(5)), a creditor's claim to have a security interest where none exists would be an additional disclosure that misleads consumers about the subject of a required disclosure.

**9.** A broader construction of the statute that premised liability upon *any* misleading or confusing disclosure obviously would deter creditors from disclosing optional information. Although Regulation Z presumably addresses the

most important items of credit information, it also is obvious that consumers benefit from additional disclosures that do not impair the quality of required disclosures. For example, some consumers will benefit from G. Fox's optional disclosure of the circumstances in which additional finance charges are not assessed. Our interpretation of § 36–395–5(b), (§ 226.-6(c)), does not cause consumers unduly to forgo the benefits of such optional disclosures and is fully consistent with TILA's policies.

**10.** After the argument of the appeal defense counsel advised the court that there are additional circumstances, beyond those discussed in the opinion, in which G. Fox does not impose additional finance charges on its customers' accounts. We do not consider those additional circumstances in this appeal.

exception of the capitalized "S" in "See," is printed in lower case. G. Fox printed the § 226.7(c)(4) notice on the face of its periodic statements as follows: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION". G. Fox thus printed the words used in § 226.7(c)(4), but printed them in a different style. Not only did G. Fox fail to italicize "NOTICE," it printed the words following the colon in upper rather than lower case. The Gambardellas claim, and the district judge agreed, that the variance between G. Fox's print style and that found in § 226.7(c)(4) violated TILA.[11] The district judge concluded that the use of the imperative word "shall" in § 226.7(c)(4), together with the differentiation in print style between the required notice and the remainder of the regulation, indicates that "a creditor must print the required notice as it appears in the regulation, including its peculiar print and type characteristics." We disagree.

Several factors indicate that § 226.7(c)(4) does not impose print style requirements. First, the FRB apparently states such requirements expressly when it intends to impose them. A different provision of Regulation Z, § 226.6(a), provides:

> [W]here the terms "finance charge" and "annual percentage rate" are required to be used, they *shall be printed more conspicuously than other terminology required by this part* and all numerical amounts and percentages shall be stated in figures and *shall be printed in not less than the equivalent of 10 point type, .075 inch computer type, or elite size typewritten numerals . . .*

(emphasis supplied). Section 226.7(c)(4) contains no language similar to that emphasized above. Where an administrative agency has "carefully employed a term in one place and excluded it in another," the "usual canons of statutory construction" counsel that the term not be implied where

excluded. *Marshall v. Western Union Tel. Co.,* 621 F.2d 1246, 1251 (3rd Cir.1980). The FRB's use of express print style requirements in § 226.6(a), and its omission of such terms from § 226.7(c)(4), thus suggests that the district judge misread § 226.7(c)(4). Second, neither Regulation Z nor the Connecticut regulations have themselves consistently used the print style the Gambardellas claim is mandatory. The FRB promulgated Regulation Z in 1969. The required notice, as then stated, and as first codified in § 226.7(c)(3) in 1970, was printed as: "NOTICE: See reverse side for important information." The FRB added italics in 1976 without explanation. The Connecticut regulations, between 1969 and 1979, printed the required notice as it first appeared in Regulation Z. *See* § 36–395–6(c)(3) (1970). Connecticut did not, between 1976 and 1979, add to § 36–395–6(c)(3) the italics the FRB added to § 226.7(c)(4) in 1976. Beginning in 1979, and continuing thereafter throughout the time period relevant to this case, Connecticut printed the required notice as: "Notice: see reverse side for important information." *See* § 36–395–6(c)(4) (1979). The Connecticut regulation, so printed, differed from the federal in failing both to capitalize the "s" in "see," and to capitalize and italicize "Notice." States granted exemptions under 15 U.S.C. § 1633 must insure that creditors "make required disclosures and deliver required notices in *form,* content, and terminology as prescribed" in Regulation Z. § 226.-50(c)(2)(iii) (emphasis supplied). Accordingly, if § 226.7(c)(4) requires creditors to print the notice provision in a specific form, Connecticut should have italicized "NOTICE" after 1976, and should not have amended its regulation in 1979 to create further distinctions between it and § 226.7(c)(4). Although Connecticut's failure to track the federal regulation could be accidental, the FRB's failure in 1976 to explain why it

---

**11.** Although in most of this opinion primary citation is made to Connecticut law, this section focuses upon the federal regulations for two reasons. First, the district judge issued his ruling under the federal regulation and did not construe the corresponding Connecticut regulation. Second, if the federal regulation does impose print style requirements, the Connecticut regulation, to the extent it imposed different print style requirements, would be unenforceable. *See* 12 C.F.R. § 226.6(b)(1)(i).

italicized "NOTICE" suggests that it also did not view a change in print style as a substantive amendment. Lastly, the FRB in 1969 issued a pamphlet entitled "What You Ought to Know About Federal Reserve Regulation Z—Truth in Lending Consumer Credit Cost Disclosure." The FRB intended the pamphlet to help creditors comply with the new regulations, and included in it model forms covering a variety of disclosure issues. The model form which illustrated a possible format for periodic statements issued in connection with open-end credit accounts printed the notice provision as: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." In 1969, as noted above, Regulation Z printed the notice provision as "NOTICE: See reverse side for important information." The FRB thus printed the notice provision differently in the model form than in the regulations.[12] We conclude that the FRB did not interpret § 226.7(c)(4) to impose print style requirements.

The cases, administrative rulings, and FRB public information letters cited by the Gambardellas do not support their claim. Although FRB Public Information Letter No. 477 (May 19, 1971) does indicate that creditors cannot vary the *wording* of the notice required by § 226.7(c)(4), it nowhere suggests that the regulation's print style is mandatory.

The FRB intended § 226.7(c)(4) to inform consumers of the presence of reverse side information. The Gambardellas argue that if § 226.7(c)(4) is interpreted not to impose print style requirements, creditors will use print styles inappropriate to the regulation's purpose. They argue that the print style used in § 226.7(c)(4), because it italicizes and capitalizes "*NOTICE,*" and uses lower case letters in the remainder of the provision, draws the consumer's attention to the word "*NOTICE*" and causes him to read the notice provision. They claim that other print styles, such as that used by G. Fox, may not adequately highlight the word

"NOTICE" and are less likely to make the consumer aware of the notice provision. The Gambardellas' argument has no merit. Because creditors must make required disclosures "clearly" and "conspicuously," § 226.6(a), (§ 36–395–5(a)), and because the § 226.7(c)(4) notice is a required disclosure, it is unnecessary to read print style requirements into § 226.7(c)(4) to insure adequate disclosure of the notice provision. Instead, whatever print style a creditor adopts must disclose the notice provision clearly and conspicuously. We are satisfied that the print style G. Fox adopted satisfied that standard. G. Fox printed the notice provision all in capitals at the bottom of its periodic statements, and used type as large and dark as most upon the page. A consumer who examined his periodic statement with any care could not fail to see the notice provision. We thus find that G. Fox complied with § 226.7(c)(4).

### B. *Claims Not Ruled Upon.*

■ Because proof of multiple violations in a single periodic statement does not increase the plaintiff's recovery, Conn.Gen. Stat. § 36–407(g), (15 U.S.C. § 1640(g)), the district judge found it unnecessary to decide all of the Gambardellas' claims. Instead, after granting the Gambardellas summary judgment on two claims, he declined to rule upon the four claims remaining. Since we, in turn, have reversed the grants of summary judgment, we proceed to consider the four claims not ruled upon below. We see no reason for a remand. Where, as here, the language and format of the periodic statement are undisputed, and the sole issue is whether required disclosures have been made clearly and conspicuously, or whether additional disclosures confuse or mislead, the court may appropriately decide the plaintiff's claims as raising issues of law. *See Ives v. W.T. Grant Co.,* 522 F.2d 749, 759 (2d Cir.1975) (affirming grant of summary judgment to truth-in-lending plaintiff and rejecting defendant's argument that district court erred in failing

**12.** The 1969 pamphlet is relevant solely as an FRB staff interpretation of § 226.7(c)(4), and we have not considered G. Fox's claim that it

relied upon the pamphlet in the preparation of its periodic statements.

to hold evidentiary hearing); *contra, Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 221 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). We see little chance that a remand would produce competent evidence, other than the documents themselves, relevant to the Gambardellas' claims. *Cf. Enright v. Beneficial Fin. Co. of N.Y.,* 527 F.Supp. 1149, 1156 (N.D.N.Y. 1981). For that reason, and because the parties have fully briefed the additional claims, we have reviewed the claims and find that all four lack merit.

### 1. *Failure to Use Dollar Signs.*

G. Fox prints two horizontal columns at the top of its periodic statements. The top column, reading from left to right, contains the terms "Previous Balance," "Finance Charge," "Purchases," "Payments," "Credits," and "New Balance." The second column, located directly beneath the first, contains blank spaces into which G. Fox inserts the appropriate monetary amounts for each customer at the close of a billing cycle. Each of the amounts so inserted appears directly beneath a descriptive heading in the top column, *e.g.,* "Previous Balance." The amounts are separated from one another by arithmetical symbols indicating that "Previous Balance" plus "Finance Charge" plus "Purchases" minus "Payments" minus "Credits" equals "New Balance." G. Fox does not precede the numbers in the second column with dollar signs ($). Similarly, further down on the statements, G. Fox prints monetary amounts without dollar signs under the headings "Average Daily Balance," "Past Due Amount," and "Minimum Payment." G. Fox does use dollar signs in disclosing, at the bottom of the statements, certain facts about the past month's finance charge. There, G. Fox prints dollar signs before the actual amounts of the finance charge and of the minimum finance charge, if any, and the range of balances to which differing periodic rates may be applicable.

The Gambardellas claim that G. Fox violated the regulations by failing to print dollar signs before all monetary amounts. They argue that dollar signs are needed clearly to disclose that the figures appearing on a customer's statement refer to dollar amounts, and that the absence of such signs rendered G. Fox's disclosure of monetary amounts unclear or confusing, in violation of § 36–395–5(a) & (b), (§ 226.6(a) & (c)). They argue that G. Fox's use of dollar signs at the bottom of its statements, but not elsewhere, enhances the potential for confusion.

We see no merit in this ridiculous claim. There is no express regulatory requirement that creditors precede monetary amounts with dollar signs, nor do we see any realistic possibility that G. Fox customers would fail to realize which numbers appearing on their statements refer to dollar amounts. Each of the figures the Gambardellas claim should have been preceded by a dollar sign stands by itself, apart from any text, under a column heading which can reasonably be read only to refer to an amount of money. Under these circumstances dollar signs were not required. *See Household Consumer Discount Co. v. Payne,* 62 Ohio App.2d 181, 405 N.E.2d 729 (1978); *GAC Fin. Corp. of Spokane v. Burgess,* 16 Wash.App. 758, 558 P.2d 1386 (1977).[13]

### 2. *Use of "CR" Symbol.*

G. Fox uses the symbol "CR" in several places on its periodic statements. The central portion of the statements consists of

---

13. In *Flesher v. Household Fin. Corp. of Ohio,* 640 F.2d 861, 862–63 (6th Cir.1981), the Sixth Circuit held that a creditor's disclosure of a default and deferment charge in a loan agreement simply as ".9863," without a dollar sign, violated TILA. The figure so stated was the only figure in the agreement not accompanied by a dollar or percentage sign, and apparently appeared in a line of text rather than under a column heading. Although the court did not note the point, dollar amounts are not ordinarily stated as four figures following a decimal point and thus the figure, standing alone, was ambiguous. The Sixth Circuit concluded that the figure did not implicitly refer to a dollar amount, but could be misread as referring to a percentage or some other charge. This case does not present any danger of misinterpretation similar to that found in *Flesher.*

five vertical columns headed, from left to right, "Date," "Reference No.," "Store/Dept No.," "Description of Dept," and "Amount." G. Fox reports receipt of a payment by printing the word "Payment" under "Description of Dept," and printing the amount of payment, followed by "CR," under "Amount." If the consumer has received a credit during the billing period, G. Fox identifies the store department which granted the credit, *e.g.*, "Career Separates," under "Description of Dept," and under "Amount" prints the amount of the credit followed by "CR." Finally, if the consumer's "Previous Balance" or "New Balance" is a credit balance, G. Fox prints the amount of the balance, followed by "CR," under the appropriate heading at the top of the statement.

G. Fox thus uses "CR" to denote payments, credits, and credit balances. The Gambardellas claim that G. Fox's multiple use of "CR" drains the symbol of meaning and renders the disclosures it accompanies unclear and confusing, in violation of the regulations. We disagree.

The regulations require creditors to disclose their customers' balances at the start and at the close of the billing cycle, and appropriately to identify credit balances. Conn.Bank.Reg. § 36–395–6(b)(1)(i) & (ix), (§ 226.7(b)(1)(i) & (ix)). G. Fox has complied with this requirement. It discloses starting and closing balances under the headings "Previous Balance" and "New Balance." It identifies credit balances by appending "CR" to the amount stated, and by explaining on the reverse of its statements that "[t]he symbol 'CR' when appearing with a balance indicates a credit balance." FRB Public Information Letter No. 1027 (April 15, 1976) states that the symbol "CR," placed before or after a balance amount, appropriately identifies a credit balance if the disclosure statement explains the symbol's meaning. G. Fox employed the format approved in Letter No. 1027, and its use of "CR" to denote credit balances must be upheld.

G. Fox appends "CR" to amounts recorded as payments or credits because all such amounts result in credits (as opposed to debits) to the customer's account. The symbol "CR" is thus meant not to distinguish payments from other credits, but merely to inform the consumer that the amount recorded redounds to his benefit. Creditors must, however, separately disclose payments and credits, and must specifically identify all such amounts. § 36–395–6(b)(1)(iii), (§ 226.7(b)(1)(iii)). The issue, therefore, is whether G. Fox's use of "CR," as an accounting symbol, in connection with both payments and credits violates its duty to make clear and separate disclosures. We conclude that it does not.

G. Fox specifically identifies payments on its statements by printing "Payment" directly opposite the amount recorded in the "Amount" column. The "CR" symbol appended to the recorded amount is therefore unlikely to cause a consumer to believe that credit has been granted for some reason other than payment. G. Fox discloses credits other than payments by identifying the department that granted credit opposite the amount recorded. Although G. Fox does not print the word "credit" directly opposite credit amounts separately recorded in the center of the form, it does print, under the heading "Credits" at the top of the form, the total amount of credits for the billing period. A consumer who doubts the nature of a recorded item may thus compare the amounts of the items separately recorded to the total amount stated under "Credits." Such cross-checking should easily distinguish credit items from payments.

3. *Disclosure of Minimum Finance Charge.*

Section 36–396–6(b)(1)(iv), (§ 226.-7(b)(1)(iv)), requires disclosure of all finance charges, including any minimum finance charge, assessed during the billing period. G. Fox assesses a minimum finance charge of 50¢ upon the accounts of those of its Massachusetts and Rhode Island customers who had an average daily balance of $3 to $34 during the billing period. Conn.Gen. Stat. § 42–133c limits the interest rates creditors may charge on open-end credit

accounts. The practical effect of § 42–133c is to prohibit minimum finance charges in Connecticut, and G. Fox does not impose such charges in Connecticut. G. Fox uses the same disclosure form for the periodic statements it sends customers in Connecticut, Massachusetts, and Rhode Island. At the bottom of the form G. Fox prints:

☐ FINANCE CHARGE is due to a minimum charge of $          .

On periodic statements sent Massachusetts and Rhode Island customers who have been assessed a minimum finance charge, G. Fox places an "x" in the box to the left of the words "FINANCE CHARGE" and writes the amount of the charge after the dollar sign at the end of the sentence. Periodic statements sent Connecticut customers always leave blank both the box at the beginning of the sentence and the space at the end.

The Gambardellas claim that the quoted sentence, when included in periodic statements sent Connecticut customers, breached G. Fox's duty clearly to disclose finance charges. They say that the sentence could confuse Connecticut consumers about the applicability of minimum charges. We cannot agree. Blank-box formats are in common use on many kinds of forms, financial and otherwise, to indicate the applicability of various options stated on the forms. In Official Staff Interpretation No. FC–0081, 42 Fed.Reg. 31,430 (June 3, 1977), the FRB approved a creditor's proposal to use a blank-box format in a consumer loan form. *See also Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 931 n. 4 (3rd Cir.) (blank-box format did not violate TILA), *vacated on other grounds,* —— U.S. ——, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). Of course, the FRB, in Official Staff Interpretation No. FC–0081, did not give unqualified approval to all blank-box formats, and courts must, in each case, consider whether the creditor's particular format clearly disclosed required information. Here, we are satisfied that disclosure was clearly made.

A consumer would most likely read a G. Fox periodic statement in which both the box at the beginning and the blank at the end of the sentence were left empty to mean that no minimum finance charge had been imposed. Moreover, G. Fox dispels any possible confusion by printing on the reverse of its statements: "For residents of Connecticut . . ., there is no minimum FINANCE CHARGE." The sentence at issue did not breach G. Fox's duties under § 36–395–6(b)(1)(iv).

[11] The Gambardellas also claim that because Connecticut prohibits minimum finance charges, G. Fox may not include the sentence in periodic statements sent Connecticut consumers. They argue that the Act prohibits a creditor from claiming to employ practices that are unlawful in the consumer's state. Courts have been unable to agree whether a disclosure statement which claims a right or interest prohibited by state law violates the Act. *Compare Tinsman v. Moline Beneficial Fin. Corp.,* 531 F.2d 815 (7th Cir.1976) (violation), *with Pennino v. Morris Kirschman & Co.,* 526 F.2d 367, 371 (5th Cir.1976) (no violation). *See Veney v. First Virginia Bank-Colonial,* 535 F.Supp. 181, 183–190 (E.D.Va.1982) and cases discussed therein. But if the Act does prohibit such claims (a question we need not address), there surely is no violation if the creditor restricts its claim to those consumers against whom the claimed right or interest may lawfully be asserted. Where a creditor's multi-state disclosure form clearly indicates that an interest lawful in only some states is not claimed where it is prohibited, the consumer's rights are not misstated and no basis for liability exists. Such is the situation here. G. Fox's periodic statements clearly reveal that Connecticut accounts are not subject to minimum finance charges.[14]

### 4. Disclosure of Rates Used to Compute Finance Charge.

Conn.Bank.Reg. § 36–395–6(b)(1)(v), (§ 226.7(b)(1)(v)) requires disclosure of:

---

14. We note that G. Fox did not merely state its minimum finance charge policy and then, through a general disclaimer, disclaim the interest "where prohibited by law," but that it specifically informed Connecticut consumers, through the blank-box format and the reverse-side disclosure, that minimum finance charges are not imposed in Connecticut.

[E]ach periodic rate, using the term "periodic rate" or "rates", that may be used to compute the finance charge, whether or not applied during the billing cycle, and the range of balances to which it is applicable, and the corresponding annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

G. Fox applies a monthly interest charge of 1.25% to all of its Connecticut accounts, regardless of the amount of the balance. On Massachusetts and Rhode Island accounts, however, G. Fox applies different interest rates to different ranges of balances. The application of different rates to different ranges of balances is called a "break rate" system. G. Fox uses the same form for the periodic statements it sends Connecticut, Massachusetts, and Rhode Island customers. The form is designed to accommodate disclosure of a break rate system that employs two different interest rates. When completed and sent to Connecticut customers, who are not subject to break rates, the form appears as follows:

| THAT PORTION OF THE AVERAGE DAILY BALANCE UP TO OR EQUAL TO | PERIODIC RATE | ANNUAL PERCENTAGE RATE |
|---|---|---|
| $.00 | 1.25% PER BILLING CYCLE | 15% |

| THAT PORTION OF THE AVERAGE DAILY BALANCE IN EXCESS OF | PERIODIC RATE | ANNUAL PERCENTAGE RATE |
|---|---|---|
| $.00 | 1.25% PER BILLING CYCLE | 15% |

G. Fox thus tells Connecticut consumers that the portion of their balances up to or equal to $0 is subject to a periodic rate of 1.25%, and to an annual rate of 15%. It also discloses that the same rate is applied to balances exceeding $0. The Gambardellas claim that G. Fox has breached its § 36–396–6(b)(1)(v) duty clearly to disclose periodic and annual rates. They argue that G. Fox's statement regarding the interest rate applied to balances up to or equal $0 is inaccurate and misleading. We agree with the Gambardellas that the statement is inaccurate since, in fact, G. Fox does not impose finance charges (or pay interest) on credit balances. We find, however, that any technical inaccuracy in the statement is unlikely to mislead consumers, and that G. Fox's disclosure of periodic and annual rates, though hardly made in a model format, is sufficient under the law.

FRB Public Information Letter No. 651 (Dec. 15, 1972), states that the "range of balance" disclosure required by § 226.-7(b)(1)(v) is "intended to show the break point where there was more than one rate applicable to the account." The Letter informed a creditor proposing to apply a single periodic rate that it was not required separately to disclose ranges of balances. Similarly, FRB Public Information Letter No. 1108 (September 1, 1978), states that § 226.7(b)(1)(v) requires more than one annual percentage rate disclosure "only when different periodic rates are applied to different ranges of balances." These letters indicate that G. Fox was not required to make more than one disclosure of periodic and annual rates in Connecticut, but they do not, we think, indicate that G. Fox was prohibited from doing so. Instead, the inquiry must be whether G. Fox clearly and conspicuously disclosed periodic and annual rates. We think that it did. G. Fox's two disclosures state, in effect, that the same interest rates are applied to balances up to or equal to $0 as to balances greater than $0. A consumer is therefore unlikely to believe, the range of balance disclosures notwithstanding, that more than one periodic or annual rate will be applied to his account. G. Fox prints the following statement immediately above the portion of the form reproduced above: "FINANCE CHARGE OF $ ___ is the result of the application of the following periodic rate(s)." The parentheses surrounding the "s" in "rate(s)" implicitly informs the consumer that only one periodic rate may be applicable. Finally, to the extent that G. Fox's statement concerning balances equal to or less than $0 is inaccurate, it implies that finance charges are assessed on credit balances. Few, if any, consumers are unaware that finance charges are imposed on amounts they owe the company, and not on amounts the company owes them.

It is true that G. Fox's disclosure of periodic and annual rates could be improved upon. G. Fox could simply inform Connecticut consumers that finance charges are assessed on the average daily balance at a periodic rate of 1.25% and an annual rate of 15%, whenever the average daily balance is greater than $0. The multi-state disclosure form adopted by G. Fox does convey that information to Connecticut consumers, but requires the consumer to exercise some degree of care and study. Obviously, G. Fox's disclosure concerning balances less than or equal to $0 is meaningless and could be deleted without loss. TILA, however, does not require perfect disclosure, but only disclosure which clearly reveals to consumers the cost of credit. *See Dixon v. D.H. Holmes Co.,* 566 F.2d 571 (5th Cir.1978). Because the statements G. Fox sent Connecticut consumers, read as a whole, clearly disclosed periodic and annual rates, the imperfections in format did not violate the law.

Accordingly, we reverse the judgment, vacate the award of attorneys' fees, and remand the case with directions to dismiss the complaint.

## APPENDIX

# G. FOX & CO.

**960 MAIN STREET · HARTFORD, CONN. 06101**

**0. HARTFORD   1: WATERBURY   2. ENFIELD   3. MERIDEN   4. WESTFARMS   5. MIDLAND MALL   6. TRUMBULL   7. HOLYOKE**

ENTER AMOUNT OF
YOUR PAYMENT

**If address above is not correct please make corrections here.**

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT

| PREVIOUS BALANCE | FINANCE CHARGE | PURCHASES | PAYMENTS | CREDITS | NEW BALANCE | CLOSING DATE OF THE BILLING CYCLE |
|---|---|---|---|---|---|---|
| | + | + | | | | |

TO AVOID ADDITIONAL **FINANCE CHARGES**   PAY THE NEW BALANCE ↗ IN FULL
BY THE PAYMENT DUE DATE

| DATE | REFERENCE NO | STORE/DEPT NO | DESCRIPTION OF DEPT | AMOUNT |
|---|---|---|---|---|
| | | | | |

FLEX – means Flexible Charge Account
BLA – means Better Living Account
SILV – means Silver Club Plan

Send billing inquiries to P O Box 90 Hartford, CT 06101 Phone 727-4700
(Note: A telephone inquiry will not preserve your rights to dispute billing errors as explained in Section V on reverse side)

| ACCOUNT NO | TYPE OF ACCOUNT | AVERAGE DAILY BALANCE | PAST DUE AMOUNT | MINIMUM PAYMENT NOW DUE (INCLUDES PAST DUE AMOUNT) |
|---|---|---|---|---|
| | | | | |

☐ FINANCE CHARGE OF $ _____ IS THE RESULT OF THE APPLICATION OF THE FOLLOWING PERIODIC RATE(S)

| | PERIODIC RATE | ANNUAL PERCENTAGE RATE |
|---|---|---|
| THAT PORTION OF THE AVERAGE DAILY BALANCE UP TO OR EQUAL TO $ _____ | _____ % PER BILLING CYCLE | _____ % |
| THAT PORTION OF THE AVERAGE DAILY BALANCE IN EXCESS OF $ _____ | _____ % PER BILLING CYCLE | _____ % |

☐ FINANCE CHARGE IS DUE TO A MINIMUM CHARGE OF $

NOTICE SEE REVERSE SIDE FOR IMPORTANT INFORMATION

G. FOX & CO.

# ALWAYS CARRY YOUR
# G. FOX CREDIT CARD.
# HAVE IT READY
# WHEN YOU CHARGE.
# THE FASTEST,
# EASIEST WAY TO SHOP!

I.

*Silver Club*

If this is a Silver Club Plan which does not have an installment past due, the **FINANCE CHARGE** (if any) represents a one-time minimum charge of 50¢

II.

*Flexible Charge Account and Better Living Account*

1. No **FINANCE CHARGE** is assessed in any billing period in which the "Previous Balance" is a credit balance or is $3 or less or in which payments and other credits equal or exceed the "Previous Balance".

2. For residents of Massachusetts and Rhode Island a minimum **FINANCE CHARGE** of 50¢ may be imposed if the "Average Daily Balance" is above $3 but under $34. If the "Average Daily Balance" equals or exceeds $34, the **FINANCE CHARGE** is the result of applying the periodic rate(s) disclosed on the front to the "Average Daily Balance" disclosed on the front. The "Average Daily Balance" is calculated by (a) adding the outstanding balances (including accrued and unpaid **FINANCE CHARGE**) in the account for each day of the billing cycle (including in the calculation for each such day payments and credits but not purchases recorded in the account during the billing cycle on or before such day) and (b) dividing this total by the number of days in the billing cycle

3. For residents of Connecticut and all states other than Massachusetts or Rhode Island, there is no minimum **FINANCE CHARGE** and the **FINANCE CHARGE** is the result of applying the periodic rate(s) disclosed on the front to the "Average Daily Balance" disclosed on the front. The "Average Daily Balance" is calculated by (a) adding the outstanding balances (including accrued and unpaid **FINANCE CHARGE**) in the account for each day of the billing cycle (including in the calculation, for each day, purchases, payments and credits recorded in the account during the billing cycle on or before such day) and (b) dividing this total by the number of days in the billing cycle

4. The state to which billing statements are mailed constitutes the state of "residence" for the purposes of this paragraph II.

III.

Payments must be received on or before 3:00 p.m. at the G. Fox & Co. main office 960 Main Street Hartford Connecticut 06103 to be credited that day. Any other location of payment may result in a delay of up to 5 days in crediting your payment

122

IV. The symbol 'CR' when appearing with a balance indicates a credit balance. If your New Balance' is a credit balance that credit balance is an amount owed by us to you. You may make charges against such a credit balance or you may, upon request obtain a cash refund of the credit balance. If after a 3 month period following the close of the billing cycle in which such credit balance first appeared no other activity has occurred on such account or no request for a refund has been made we will send you a check in the amount of such credit balance within 30 days.

In Case of Errors or Inquiries About Your Bill

The Federal Truth-in-Lending Act requires prompt correction of billing mistakes.

1. If you want to preserve your rights under the Act here's what to do if you think your bill is wrong or if you need more information about an item on your bill
   a Do not write on the bill On a separate sheet of paper write (you may telephone your inquiry but doing so will not preserve your rights under this law) the following
      i. Your name and account number (if any)
      ii. A description of the error and an explanation (to the extent you can explain) why you believe it is an error. If you only need more information explain the item you are not sure about and if you wish ask for evidence of the charge such as a copy of the charge slip Do not send in your copy of a sales slip or other document unless you have a duplicate copy for your records
      iii. The dollar amount of the suspected error
      iv. Any other information such as your address which you think will help G Fox & Co to identify you or the reason for your complaint or inquiry
   b Send your inquiry to G Fox & Co P O Box 90 Hartford Connecticut 06101 Mail it as soon as you can but in any case early enough to reach G Fox & Co within 60 days after the bill was mailed to you

2. G Fox & Co must acknowledge all letters pointing out possible errors within 30 days of receipt unless G Fox & Co is able to correct your bill during that 30 days. Within 90 days after receiving your letter G Fox & Co must either correct the error or explain why G Fox & Co believes the bill was correct. Once G Fox & Co has explained the bill G Fox & Co has no further obligation to you even though you still believe that there is an error except as provided in paragraph 5 below

3. After G Fox & Co has been notified neither G Fox & Co nor an attorney nor a collection agency may send you collection letters or take other collection action with respect to the amount in dispute but periodic statements may be sent to you, and the disputed amount can be applied against your credit limit. You cannot be threatened with damage to your credit rating or sued for the amount in question nor can the disputed amount be reported to a credit bureau or to other creditors as delinquent until G Fox & Co has answered your inquiry. However you remain obligated to pay the parts of your bill not in dispute

4. If it is determined that G Fox & Co has made a mistake on your bill you will not have to pay any FINANCE CHARGES on any disputed amount. If it turns out that G Fox & Co has not made an error, you may have to pay any FINANCE CHARGES on the amount in dispute and you will have to make up any missed minimum or required payments on the disputed amount. Unless you have agreed that your bill was correct G Fox & Co must send you a written notification of what you owe, and if it is determined that G Fox & Co did make a mistake in billing the disputed amount you must be given the time to pay which you normally are given to pay undisputed amounts before any more FINANCE CHARGES or late payment charges can be charged to you

5. If G Fox & Co's explanation does not satisfy you and you notify G Fox & Co in writing within 10 days after you receive its explanation that you still refuse to pay the disputed amount, G Fox & Co may report you to credit bureaus and other creditors and may pursue regular collection procedures. But G Fox & Co must also report that you think you do not owe the money, and G Fox & Co must let you know to whom such reports were made. Once the matter has been settled between you and G Fox & Co G Fox & Co must notify those to whom G Fox & Co reported you as delinquent of the subsequent resolution

6. If G Fox & Co does not follow these rules, G Fox & Co is not allowed to collect the first $50 of the disputed amount and FINANCE CHARGES even if the bill turns out to be correct

7. If you have a problem with property or services purchased with a credit card, you may have the right not to pay the remaining amount due on them, if you first try in good faith to return them or give G Fox & Co a chance to correct the problem

NEWMAN, Circuit Judge, concurring:

I concur in the Court's judgment and in all portions of Judge Lumbard's opinion except Part A.1. concerning the claim that G. Fox failed to disclose, or misleadingly disclosed, the amount of the payment necessary to avoid additional finance charges. In the majority's view, no violation occurred because, under its construction of the Truth in Lending Act (TILA), 15 U.S.C. § 1637(b)(10) (1976), and Regulation Z, 12 C.F.R. § 226.7(b)(1)(ix), p. 593 (1982) (pre-October 1, 1982, version), a creditor must notify a customer only of the date by which payment must be made to avoid finance charges, but not the amount of such payment. In my view, that construction is at odds with both common sense and the interpretation of the Federal Reserve Board, and I write separately to set forth the basis of my disagreement with that construction. Nevertheless, I agree, for reasons explained below, that the defendant's disclosure of the payment necessary to avoid finance charges was not in violation of TILA.

The front side of the printed billing form sent by defendant G. Fox & Co. to the plaintiffs contains this statement: "To avoid additional FINANCE CHARGES pay the new balance in full by the payment due date." The reverse side contains this statement: "No FINANCE CHARGE is assessed in any billing period in which the 'Previous Balance' ... is $3 or less...." In the District Court the parties assumed that the practice of G. Fox was to impose a finance charge in the billing cycle that followed receipt of a bill unless the "previous balance" listed on that bill was $3 or less. While the case has been pending in this Court, the parties have learned that the policy of G. Fox is in fact somewhat more generous to customers: no finance charge is imposed if the previous balance is $3 or less, or if the customer pays all but $3 of his new balance, or if the average daily balance is $3 or less.

The majority opinion, viewing the case solely on the facts as they were thought to exist in the District Court, observes that the statement on the front side of the bill is "generally accurate," at 110, though "misleading to customers who have 'new balances' of $3 or less." *Id.* The majority then concludes (1) that, under TILA and Regulation Z, the amount of payment necessary to avoid additional finance charges is not a required disclosure and that (2) misleading statements that concern only non-required information do not violate the Act. I disagree with the first of these interpretations.[1]

I.

One of the disclosures TILA requires a creditor to make in a bill under an open-end consumer credit plan is "the date by which ... payment must be made to avoid additional finance charges." 15 U.S.C. § 1637(b)(10)(1976), 12 C.F.R. § 226.-7(b)(1)(ix), p. 593 (1982) (pre-October 1, 1982, versions).[2] Purporting to defer to the expertise of the Federal Reserve Board (the Board), the majority reads this language rigidly to mean that a creditor must disclose only the *date* by which payment must be made to avoid additional finance charges but not the *amount* of the payment that must be made to avoid such charges. If we had no guidance from the Board, I would challenge that construction, since it seems odd, to say the least, to require a creditor to

1. The second interpretation, though adopted elsewhere, *Stewart v. Ford Motor Credit Co.,* 685 F.2d 391 (11th Cir.1982); *Fox v. Heilig-Meyers Co.,* 681 F.2d 212, 214 (4th Cir.1982) (alternative holding), is not free from doubt, *see Stewart v. Ford Motor Credit Co., supra,* 685 F.2d at 395 (Clark, J., dissenting). The statute simply says that a creditor "may supply additional information." 15 U.S.C. § 1632 (1976 & Supp. V 1981). The Regulation, as it read when plaintiffs' claim arose, was more precise. It permitted "additional information" but specified:

> none shall be stated, utilized, or placed so as to mislead or confuse the customer ... or contradict, obscure, or detract attention from the information required ... to be disclosed.

12 C.F.R. § 226.6(c), p. 588 (1982) (pre-October 1, 1982, version). As a matter of parsing, this regulation would normally be read to accomplish two distinct objectives: (1) banning any statement that misleads or confuses a customer and (2) banning any statement that contradicts, obscures, or detracts attention from a required disclosure. However, in the revised version of Regulation Z, the Federal Reserve Board deleted former section 226.6(c) with this explanation:

> The Board believes that additional information may be included on the statement, and its use will be adequately regulated by the general requirement that all open-end Truth in Lending disclosures be made clearly and conspicuously.

46 Fed.Reg. 20848, 20857 (April 7, 1981). Since the "clearly and conspicuously" standard applies only to required disclosures, 12 C.F.R. § 226.6(a), p. 586 (pre-October 1, 1982, version), *id.* at § 226.5(a), p. 835 (current version), it is apparently the Board's view that optional information will be "adequately regulated" simply by determining whether, in light of the optional information, the required information remains "clearly and conspicuously" disclosed. This suggests that the Board does not construe TILA to regulate the clarity of optional information, except to the extent that such information might impair understanding of a required disclosure. The Board gave no indication that it viewed the deletion of former section 226.6(c) as a substantive change.

2. The current versions appear at 15 U.S.C. § 1637(b)(9) (Supp. V 1981) and 12 C.F.R. § 226.7(j), p. 837 (1982).

tell a customer *when* he must make a payment but not *what* payment he must make. Indeed, it is difficult to imagine how a creditor could tell a customer when to pay without also telling him the amount to pay. An instruction to make an unspecified payment by a specified date would hardly be informative.

Fortunately the Board has made explicit what common sense would tell us is the proper way to construe the payment date provision. On May 5, 1980, the Board proposed a revised version of this provision, requiring the following disclosure:

> (11) Free-ride period. The date by which ... the new balance must be paid in order to avoid the imposition of finance charges. If only a portion of the new balance need be paid to avoid a finance charge, that amount must be disclosed....

12 C.F.R. § 226.5(c)(11) (proposed), 45 Fed. Reg. 29702, 29738 (May 5, 1980). Significantly, the Board noted that this proposal involved "no substantive change" in the existing regulation, 12 C.F.R. § 226.-7(b)(1)(ix), p. 593 (1982), which governs this case. 45 Fed.Reg. 29712. Thus, in the view of the Board, the payment date provision has always meant that the creditor must disclose the amount of payment necessary to avoid a finance charge; if the full amount of the new balance must be paid, the date by which such payment must be made is required to be disclosed, and if "only a portion" of the new balance must be paid, "that amount must be disclosed." The final version of the revised payment date provision combines the date and amount disclosures by requiring disclosure of "[t]he date by which ... the new balance or any portion of the new balance must be paid to avoid additional finance charges." 12 C.F.R. § 226.7(j), p. 837 (1982).

The majority attaches significance to the fact that the final version of section 226.7(j) omits the separate sentence, which had appeared in proposed section 226.5(c)(11), requiring disclosure when only a portion of the new balance must be paid. In the majority's view, the deletion of this separate

sentence implies a decision not to require such disclosure. 716 F.2d at 109 n. 5. I would not draw that inference for two reasons. First, an interpretation that reads the *amount* of required payment out of section 226.7(j) is so contrary to common sense that it should be resisted if any other construction is possible. Second, the Board attaches no such significance to the revision of its wording of proposed section 226.5(c) (11). On December 5, 1980, the Board published a revised version of proposed section 226.5(c)(11), renumbering it as section 226.7(k). 45 Fed.Reg. 80699 (1980). That revision deleted the second sentence of proposed section 226.5(c)(11), combining its content into a slightly expanded version of the first sentence. The commentary to the December 5, 1980, draft makes no mention of this revised wording. Since the Board's commentary to its proposed and final versions of Regulation Z always notes, and explains the reasons for, any substantive change from an earlier proposed version, the absence of explanation indicates that no change of substance had occurred. Significantly, on April 7, 1981, when the Board published the current version, renumbered as section 226.-7(j), which virtually tracked proposed section 226.7(k), it explicitly noted that this final version was "substantially the same" as the then existing section 226.7(b)(1)(ix). 46 Fed.Reg. 20860 (1981).

The Supreme Court has instructed us to heed the Board's views, expressed in connection with the revision of Regulation Z, to the extent that they explain the meaning of TILA and the original version of Regulation Z. *See Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). I therefore conclude that, as a general rule, TILA requires a creditor to disclose the amount of payment necessary to avoid finance charges.

## II.

Since, in my view, the amount of the necessary payment is a required disclosure, I must consider the issue, not reached by the majority, whether the G. Fox disclosures concerning the necessary payment

were in violation of TILA. On the facts as presented in the District Court, Judge Cabranes concluded that there was a violation because of the apparent contradiction between the front-side and reverse-side statements concerning the payment needed to avoid finance charges. In the plaintiffs' view, the facts as the parties now understand them to be show that the front-side statement itself violates TILA by informing the customer that he must pay his new balance in full to avoid finance charges, whereas in fact a finance charge will not be imposed if the customer pays all but $3 of his bill. That is surely a plausible contention, but it is refuted by the explicit authority that Regulation Z confers on a creditor not to disclose the fact that it imposes no finance charge on small balances.

Regulation Z provides:

If a creditor does not impose a finance charge when the outstanding balance is less than a certain amount, the creditor is not required to disclose that fact or the balance below which no such charge will be imposed.

12 C.F.R. § 226.7(b)(1)(v) n. 9a, p. 593 (1982) (pre-October 1, 1982, version).[3] The evident purpose is to permit a creditor to forgo charging interest on small balances without the need to inform customers of this generosity. It seems obvious that the non-disclosure permission is closely related to the forgoing of interest: if all customers were told that they need not pay the last $3 of their bill to avoid finance charges, it is reasonable to think that many would withhold the last $3, thereby making it less likely that the creditor could afford to forgo imposing interest charges on the few who

now do so. The Federal Reserve Board apparently believes that creditors can adopt their own *de minimis* rules without disclosure.

At first glance, non-disclosure of the amount below which no finance charge will be imposed may seem inconsistent with the requirement of disclosure of the amount of payment necessary to avoid finance charges. But an interpretation is available that accords meaning to both provisions. The disclosure requirement, in its currently applicable version, requires notification of the date by which "the new balance or any portion of the new balance" must be paid to avoid finance charges. 12 C.F.R. § 226.7(j), p. 837 (1982). That means that if, for example, a customer's new balance is $300, the creditor must inform him that he must pay either the entire balance or some portion of it (for example, one-third) by the due date to avoid finance charges in the next billing cycle. Creditors frequently require prompt payment of at least some stated fraction of an outstanding balance. At the same time, the non-disclosure permission allows a creditor, without notice, to forgo finance charges on small balances, below a certain amount. The Board is entitled to think that a customer needs to know whether he must pay all or some stated fraction of his bill to avoid incurring finance charges, but need not know that his failure to pay the last $3 of his bill, or the maintenance of a balance of less than $3, will not subject him to finance charges.[4]

Plaintiffs contend that the non-disclosure permission concerning small balances applies only to a creditor's decision not to

---

**3.** The current version appears at 12 C.F.R. §§ 226.6(a)(4) n. 13, 226.7(d) n. 14, p. 836 (1982).

**4.** The majority opinion relies on the "small-balance" non-disclosure language of section 226.-7(b)(1)(v) as support for its conclusion that the payment necessary to avoid finance charges need not be disclosed at all. 716 F.2d at 108–110. In the majority's view, since a creditor need not disclose that it imposed no finance charge on balances below a certain amount, it need not disclose the amount of any payment necessary to avoid finance charges. The

conclusion does not follow. It is true that a creditor who requires payment of only a portion of a balance to avoid finance charges, for example, one-third of the new balance, is forgoing interest on the remaining two-thirds. But forgoing interest on stated fractions of a balance, regardless of amount, is not the same as forgoing interest on all balances below a constant amount. Permission for non-disclosure of *de minimis* amounts is not a basis for allowing a creditor to refuse to tell a customer whether he must pay all or only some fraction of his bill in order to avoid finance charges.

impose a finance charge on a small balance in a current billing cycle and does not entitle a creditor to withhold the fact that no finance charge will be imposed in a subsequent billing cycle if the balance in that cycle is brought below a certain amount. In their view, a G. Fox customer is entitled to know that he can pay all but $3 of his new balance and still avoid finance charges on his purchases in the next billing cycle. I disagree. The wording of the non-disclosure permission in Regulation Z refers to forgoing finance charges when the "outstanding balance" is below a certain amount, making no distinction between a "new balance" in a current billing cycle and the customer's balance during the next billing cycle after making a payment. And the wording permits non-disclosure of the balance below which a finance charge "will" not be imposed. Moreover, it would make little sense to permit a creditor to conceal the fact that it does not impose finance charges on new balances of less than $3 and still require disclosure of the fact that finance charges will not be imposed when a customer's payment brings his outstanding balance down to $3. In both instances, interest is not being charged on small balances, and the Board does not require disclosure of that fact.

I conclude, therefore, that G. Fox did not violate TILA when it disclosed that payment of the new balance would avoid additional finance charges without informing the plaintiffs of the fact, now known, that finance charges would not be imposed if all but $3 of the new balance was paid. And, since G. Fox did not have to disclose any aspect of its willingness to forgo finance charges on balances under $3, it did not violate TILA, on the facts as known in the District Court, by disclosing on the reverse side of its bill one of the circumstances under which it would do so. Since the regulation permits a disclosure that full payment is necessary to be contradicted by an undisclosed policy of not imposing finance charges on small balances, it is not violated by a partial disclosure of that policy.

For these reasons I conclude that G. Fox's billing statement did not violate the payment date provision of TILA and therefore concur in the judgment and in all portions of Judge Lumbard's opinion except Part A.1.